[Civ. No. 17633. First Dist., Div. One. Oct. 28, 1958.]

GEORGE K. WHITNEY, JR., Respondent, v. EMILY WHITNEY, Appellant.

James Martin MacInnis, Nicholas Alaga and Harry P. Glassman for Appellant.

Lewis, Field, De Goff & Stein for Respondent.

WOOD (Fred B.), J.—The interlocutory decree granted Emily a divorce from George Whitney, Jr., upon the ground of extreme cruelty, and awarded her $300 a month alimony for four years, the custody of their minor child, $100 per month for the child's support, certain property characterized as community property, and $1,250 for attorney fees. She appealed from those portions which awarded her the property, and money for her support and for support of the child, but has abandoned her appeal from the award of support for the child by not discussing it.

 (1) *Was it an abuse of discretion to place a four-year limit upon respondent's duty to pay alimony? No.*

Appellant's argument starts with the premise that "one aspect of alimony is that it is a penalty." She contends that here the penalty is not in due proportion to the degree of cruelty which, she asserts, respondent committed.

A mere reading of the applicable statute demonstrates the fallacy of her premise. "In any interlocutory . . . decree . . . the court may compel the party against whom the decree . . . is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . ." (Civ. Code, § 139.) This does not speak of punishment of the guilty party measured by the degree of guilt. It speaks only of legal consequences which flow from conduct which causes dissolution of the marriage. In such a case the law imposes a duty to compensate the opposite party. This compensation does not take the form of exemplary or punitive damages. Instead, the trial court in its exercise of sound discretion is to grant a "suitable allowance for the support" of the other party, for life or a shorter period "as the court may deem just, having regard for the circumstances of the respective parties."

Appellant cites cases in which the word "penalty" was used when referring to the duty imposed by this statute. But it does not appear that the courts in those cases measured the duty in terms of the degree of the so-called offense. We think, therefore, that they used the word "penalty" as if it meant no more than the expression "legal consequence." ▪ It is more accurate to say, as the Supreme Court said in *Hall* v. *Superior Court*, 45 Cal.2d 377, 384 [289 P.2d 431]: "In theory, alimony is considered to be compensation to the injured spouse for the loss resulting from the other's breach of the obligations of the marital relationship. (*Arnold* v. *Arnold*, 76 Cal.App.2d 877, 885-886 [174 P.2d 674].) ▪ But the right to receive it depends not alone upon the granting of a divorce for the fault of the opposing party, but also upon a showing that the circumstances of the parties justify the award made. (Civ. Code, § 139; *Bowman* v. *Bowman*, 29 Cal. 2d 808, 811 [178 P.2d 751, 170 A.L.R. 246].) ▪ Despite his prevalence in the divorce action, a spouse may acquire no right to permanent alimony in the absence of a provision for it in the decree. (*Puckett* v. *Puckett*, 21 Cal.2d 833, 841 [136 P.2d 1]; *Howell* v. *Howell*, 104 Cal. 45, 47 [37 P. 770, 43 Am.St.Rep. 70].)"

▪ It seems too clear to require further elaboration that the "suitable allowance" is measured by the "circumstances of the respective parties" and in making a determination the trial court exercises a sound legal discretion. ▪ In ascertaining whether that discretion has been abused in a given case, a reviewing court uses this test: "The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." (*Newbauer* v. *Newbauer*, 95 Cal.App.2d 36, 40 [212 P.2d 240]. See also *Simpson* v. *Simpson*, 134 Cal.App.2d 219, 224 [285 P.2d 313]; *Winn* v. *Winn*, 143 Cal.App.2d 184, 188 [299 P.2d 721].)

▪ Appellant has cited no evidence that would furnish a basis for a reviewing court to conclude that "no judge could reasonably have made the order that" this trial judge did, nor have we found any such evidence in the record. The parties married in March, 1952, and separated in January, 1954. She is in her early thirties. There is nothing to indicate that she is not in good health nor that she suffers any physical impairment that might hamper her availability for gainful employment. The child will be of school age when the

four years have elapsed. Respondent testified that he was earning $125 per week gross. He held stock in a family corporation that had never paid dividends and had borrowed $11,000 upon the security of that stock. He had an expectancy of a substantial inheritance some time but it has been said that alimony " 'where the husband is without property may not be based on the husband's hope of gratuities or the court's surmise that he will receive them.' " (*Merritt* v. *Merritt*, 220 Cal. 85, 88 [29 P.2d 190].)

Should circumstances change, modification of the award could be sought for the child's support at any time prior to its maturity; for appellant's support, until respondent's obligation therefor has terminated. (*Simpson* v. *Simpson*, 134 Cal.App.2d 219, 221-222 [285 P.2d 313].)

Appellant makes the additional argument that the trial "court had openly represented to" her that "no limitation would be placed upon her right to receive alimony." Early in the trial and before any witness had taken the stand the trial judge made this observation: "Without prejudice, . . . I would be disinclined to place any limitation on the period of time during which alimony payments should run . . ." Respondent's counsel said: "Well, if you say that without prejudice—— The Court: I do say that without prejudice." A little later the court repeated this remark, adding "and I say this entirely without prejudice to either side." That furnishes appellant no basis for claiming that she was lulled into a false sense of security in the conduct of her case and the production of evidence on that issue; nor any indication that the court had foreclosed its mind on any issue. Moreover, it is the formal findings which a court makes that constitute judicial action, not mere informal remarks made during the course of a trial. (*Slavich* v. *Slavich*, 108 Cal.App.2d 451, 455 [239 P.2d 100]; *Pecarovich* v. *Becker*, 113 Cal.App.2d 309, 315 [248 P.2d 123].)

(2) *Was the closing of the hearing to the public an abuse of discretion? No.*

"In an action for divorce . . . the court may direct the trial of any issue of fact joined therein to be private . . ." (Code Civ. Proc., § 125.) The court's exclusion of the public in this case was well within the purview of that section. It was done for the good of the child, a purpose that would not be best subserved by further discussion.

(3) *It was not error to strike evidence indicative of a certain personality trait which appellant claimed respondent*

*possessed.* Appellant sympathetically regarded the alleged personality trait as a sickness in him, if indeed he possessed such a trait. Accordingly, the trial court viewed that as a noncausative factor in relation to the charge of cruelty. Also, there was no possible prejudice to appellant's case. Other evidence, not stricken, supported the finding in appellant's favor, a finding which has become final.

▪ (4) *Did the court err in the disposition of the community property? No.*

The court found "[t]here is and has been community property of the parties to this action and *the Court awards all of the same to" appellant*, and listed the items thereof. (Emphasis added.)

Appellant contends that the court erred in failing to require respondent to account for a 1953 Mercury automobile, a Simca automobile, a bunny bank, the child's bank account, and the proceeds of a check representing a federal income tax refund. No mention of these items was made in the decree.

The testimony at the preliminary hearing on temporary alimony was made a part of the record at the trial. At that time, respondent testified that the Mercury automobile had been sold for $495 and the proceeds used to pay a bill to a Dr. Lindner. The proceeds of the bunny bank were eventually used to purchase a gift for the child. The child's bank account, which was a present from respondent's parents to the child, with respondent as trustee, was disbursed for "medical expenses, living expenses for myself and my wife." Except for $500, which was used "for other expenses incurred," the proceeds of the income tax refund check were used to pay off the balance on the Simca automobile which respondent still had at the time of the preliminary hearing. Respondent paid $3,250 for the car. An interim order for alimony and support granted respondent the right to sell the Simca automobile, the proceeds to be used for payment of the community debts of the parties. However, it was agreed at the trial that the Simca was then in respondent's possession.

There was no evidence at the trial as to the value of the property awarded to the wife; the market value of the Simca at the time of the separation or trial; or the amount of respondent's separate property that was used to pay outstanding community debts. At the time the motion for temporary support was noticed, $2,013.86 in community debts allegedly were outstanding, which respondent was ordered to pay in part. Respondent testified that he borrowed approximately

$11,000 against his separate property to pay certain obligations pursuant to court order. Defendant could have sold the Simca, paid the obligations, and borrowed against his separate property to buy a car. In that situation, appellant would not be entitled to the car. That he borrowed against his separate property and kept the car should not change the situation. Moreover, appellant was not entitled to the car, but only to more than half the community property. (*Gaeta* v. *Gaeta*, 102 Cal.App.2d 87, 88 [226 P.2d 619].) Without testimony concerning the value of the various items of community property, appellant has failed to show error in this regard. (*Barry* v. *Barry*, 124 Cal.App.2d 107, 112-113 [268 P.2d 147].)

 (5) *Were objections erroneously sustained to appellant's testimony concerning the standard of living of the parties? No.*

An objection that a certain question was compound was properly sustained. Appellant's other references to the record are simply passages where the trial judge remarked that he thought the matter was covered by the evidence given at the hearing of the motion for support pendente lite, the transcript of which was made a part of the record upon the trial. We derive from those remarks no intent to curtail appellant in the presentation of her case. To the contrary, the court upon more than one occasion indicated there should be additional evidence concerning appellant's financial needs.

 (6) *Was it error to direct that the alimony payments begin soon after the date of the minute order (November 28, 1955) which directed judgment and specified that the alimony payments begin on December 1, 1955, instead of the date (February 14, 1956) the interlocutory decree was filed? No.*

This had the effect of terminating the order for temporary alimony ($350 a month) and for payment of certain medical expenses. Appellant cites no authorities in support of this assignment of error.

We perceive no element of error here. An order pendente lite is always subject to modification, as to the future. (Civ. Code, § 137.2.) The minute order of November 28 in effect modified the pendente lite order, commencing December 1, 1955.

 Nor does the trial court lack authority to direct payment of permanent alimony commencing at a date earlier than the effective date of the decree: "Generally, periodic payments commence with the effective date of the decree; but it is not an abuse of discretion to direct payment of permanent

alimony 'from the appearance of the defendant in the action, or from its commencement' (*Sharon* v. *Sharon,* 75 Cal. 1, 46 [16 P. 345]), or to reserve jurisdiction to consider it at some time after entry of the judgment of divorce. (See *McCaleb* v. *McCaleb,* 177 Cal. 147, 149 [169 P. 1023].)'' (*Hall* v. *Superior Court,* 45 Cal.2d 377, 385 [289 P.2d 431].)

■ (7) *Was it error not to award appellant psychiatric fees and the fees of an investigator? No.*

Appellant included these items in her cost bill. Upon respondent's motion the court disallowed all items including these two. It appears that the court deemed these two items not proper taxable costs.

■ The determination of the items allowable as costs is largely within the trial court's discretion. (*Von Goerlitz* v. *Turner,* 65 Cal.App.2d 425, 432 [150 P.2d 278]; *Puppo* v. *Larosa,* 194 Cal. 721, 723 [230 P. 440].) We perceive no abuse of discretion in this case. The charges do not appear on their face to be necessary disbursements. ■ Appellant had the burden of proving the element of necessity. (*Miller* v. *Highland Ditch Co.,* 91 Cal. 103 [27 P. 536] [cost of map disallowed].)

■ (8) *Was it error to dissolve the injunction which restrained respondent from disposing of certain shares of corporate stock? No.*

On December 30, 1955, a written order was filed dissolving the injunction pendente lite which had restrained respondent from disposing of his stock in Whitney's at the Beach, a California corporation. This was apparently done without notice to appellant.

It appears to us that this was simply a matter that was before the court upon submission of the cause for decision. The minute order of November 28, 1955, failed to dispose of it. Accordingly, the order of December 30, was for all practical purposes, a supplement of the order of November 28. We find in such action no error and no abuse of discretion; nor has appellant indicated to us that she was prejudiced thereby.

■ (9) *Did the court err in failing to allow evidence concerning acts that occurred after the filing of appellant's cross-complaint? No.*

Appellant was asked if surveillance of her, by detectives, occurred at a time which in fact was after the date her cross-complaint was filed. The court sustained an objection that it was not material. No supplemental complaint had been filed.

Moreover, the excluded evidence pertained to the cruelty

charge, which was supported in appellant's favor by evidence not excluded, and that feature of the judgment has become final. No conceivable prejudice has been shown.

(10) *Was it error to refuse to grant appellant her costs upon this appeal?*

Appellant contends it was error to deny her attorney fees and court costs upon appeal. There is nothing in the record before us concerning such action. Moreover, such denial was, if it did occur, in the form of a special order after final judgment, not reviewable upon appeal from the judgment. (*Fulton* v. *Fulton,* 220 Cal. 726, 729 [32 P.2d 634].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1958.