[Civ. No. 30169.   Second Dist., Div. Two.   Dec. 4, 1967.]

PAULITA LAKENAN, Plaintiff and Appellant, v. NEAL C. LAKENAN, Defendant and Respondent.

Rosenthal & Green and Richard H. Levin for Plaintiff and Appellant.

Morgan, Wenzel, Lynberg, Stearns & Morris and Landon Morris for Defendant and Respondent.

FOX, J.*—Plaintiff was granted an interlocutory decree of divorce and was given custody of the minor child of the parties. She was awarded $1,000 per month alimony and $150 per month for support of the child. Plaintiff also received all of the community property.

Being dissatisfied with the financial aspects of the judgment, plaintiff has appealed.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The parties were married in November 1950 and separated in October 1963. A daughter was born in April 1955. The interlocutory decree was rendered in February 1965,[1] on the ground of extreme cruelty.

Defendant is a man of considerable wealth, largely acquired by gift and inheritance. During the period of this marriage defendant does not appear to have had any sustained employment or to have been engaged in any regular business. He appears to be a great devotee of golf and to have spent a large portion of his time in the pursuit of that sport.

██ Plaintiff complains that the award of $1,000 per month alimony is wholly inadequate. This, of course, is a matter that is committed to the sound discretion of the trial judge, and will not be disturbed on appeal, absent a showing of an abuse of discretion, and there is no such showing here. But, argues plaintiff, the court should have considered defendant's adultery in fixing her alimony award, and its failure to take this factor into account was error and prevented her from getting the benefit of a penalty that should have been imposed on defendant because of his social misconduct. That is to say, the more serious the husband's misconduct the greater the alimony award to the wife should be. There is no merit in this theory insofar as the award of alimony is concerned. This is made clear in *Whitney* v. *Whitney*, 164 Cal.App.2d 577 [330 P.2d 947] (hear. den.). At page 580 the court stated: "Appellant's argument starts with the premise that 'one aspect of alimony is that it is a penalty.' She contends that here the penalty is not in due proportion to the degree of cruelty which, she asserts, respondent committed.

"A mere reading of the applicable statute demonstrates the fallacy of her premise. 'In any interlocutory . . . decree . . . the court may compel the party against whom the decree . . . is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . .' (Civ. Code, § 139.) This does not speak of punishment of the guilty party measured by the degree of guilt. It speaks only of legal consequences which flow from conduct which causes dissolution of the marriage. In such a case the law imposes a duty to compensate the opposite party. This compensation

---

[1]The trial consumed some 24 days. The clerk's transcript consisted of 2,331 pages, and there are more than 100 exhibits.

does not take the form of exemplary or punitive damages. Instead, the trial court in its exercise of sound discretion is to grant a 'suitable allowance for the support' of the other party, for life or a shorter period 'as the court may deem just, having regard for the circumstances of the respective parties.'

"Appellant cites cases in which the word 'penalty' was used when referring to the duty imposed by this statute. But it does not appear that the courts in those cases measured the duty in terms of the degree of the so-called offense. We think, therefore, that they used the word 'penalty' as if it meant no more than the expression 'legal consequence.' It is more accurate to say, as the Supreme Court said in *Hall* v. *Superior Court*, 45 Cal.2d 377, 384 [289 P.2d 431] : 'In theory, alimony is considered to be compensation to the injured spouse for the loss resulting from the other's breach of the obligations of the marital relationship. [Citation.] . . .''

The trial court found that the only community property consisted of the home in Beverly Hills and the furniture and furnishings therein. This property was awarded to plaintiff. The court was authorized to award all of the community property to plaintiff since the decree was granted on the ground of extreme cruelty under the provisions of section 146, subdivision (a), of the Civil Code.

Plaintiff argues, however, that the court erred in failing to find that she had a community interest in certain other property. She first mentions an executor's fee of between $10,000 and $11,000 which she claims that her husband had received as executor of his father's estate. The record, however, discloses that the estate had not been closed and no final accounting had been submitted to the probate court, and defendant had not received and could not legally receive the fee as an executor. This point is emphasized in *Estate of Heck*, 160 Cal.App.2d 162 [324 P.2d 733]. At page 166 the court stated: ". . . it is said that the amount to be allowed an attorney as compensation for ordinary probate proceedings cannot be ascertained until the amount of the estate accounted for in the administration is known, and unless the whole amount of the compensation can be ascertained, it is impossible to arrive at the proportionate amount to be allowed for a part of such services; that it is settled that an executor or administrator is not entitled to the commissions allowed by law until the settlement of his final account, and that the same rule is applicable to the allowance of attorney's fees."

Plaintiff argues that such executor's fee should have been

treated as community property as to that portion thereof which represented compensation for services defendant performed during the marriage. The difficulty with accepting this argmuent is two-fold. First, as is stated in *Estate of Heck, supra,* it is impossible to arrive at a proportionate amount to be allowed for an executor's services and second, plaintiff fails to direct the court's attention to any evidence in the record upon which the court could have made such an allocation. Under these circumstances, the executor's fee, no portion of which was due or owing at the time of trial, was a mere expectancy, not subject to division as community property. (See *French* v. *French,* 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366].)

Plaintiff also argues that certain motel properties and a restaurant, which were the separate property of defendant, had increased in value and that a portion of this increase was the result of defendant's community effort and was therefore community property. There is a conflict in the evidence as to whether these properties had, in fact, increased in value. Defendant's witness, Mr. Swoboda, testified to the effect that there had been no particular increase in the market value of these properties. ■ Plaintiff, however, vainly attacks Mr. Swoboda's qualifications to testify as an expert in the evaluation of such properties. Mr. Swoboda sold two of the motels involved here as a broker and had seen the third. He had been a motel broker exclusively for the past 10 years. In the three years preceding the trial he had sold, as a broker, motels having a sales price of $6,000,000. In light of Mr. Swoboda's extensive activity in the sale of motels, it would seem that the trial court did not abuse its discretion in permitting him to testify as an expert as to the value of the motel properties.

In arguing that there was an increase in the value of the motels and the restaurant, plaintiff is, in effect, asking this court to reweigh the testimony on this point. We, of course, cannot do that. ■ Furthermore, the evidence justifies the inference that defendant devoted his time almost exclusively to golf, and that he visited these properties only on infrequent occasions. The trial court could therefore reasonably conclude that defendant "expended only minimal effort" (*Estate of Neilson,* 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745]) in connection with these ventures. (See. also. *Weinberg* v. *Weinberg,* 67 Cal.2d 557, 566-568 [63 Cal.Rptr. 13, 432 P.2d 709].) Also, plaintiff offered no admissible evidence to establish any value for defendant's asserted services. There is

ample support for the trial court's determination that there was no community interest in these properties.

■ Plaintiff vainly argues that defendant's separate property was changed to community property by oral agreement on the theory that her testimony of such an agreement was not controverted.

In *Tidlund* v. *Seven Up Bottling Co.*, 154 Cal.App.2d 663, this court pointed out (pp. 666-667 [316 P.2d 656]) : ". . . It is elementary that the jury, in passing upon the credibility of a witness, is entitled to consider his interest in the result of the case, his motive, and the manner in which he testifies [citations], and the jury may disbelieve the testimony of the witness even though it is uncontradicted if there is any rational ground for doing so. [Citations.] . . ." In *Hicks* v. *Reis,* 21 Cal.2d 654, the court stated (pp. 659-660 [134 P.2d 788]) : ". . . in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. [Citations.] Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.] . . ." Plaintiff was obviously interested in establishing a community interest in defendant's separate property. The court was entitled to take this into consideration in passing on her credibility and to "reject *in toto*" her testimony as to such an oral agreement even if her testimony was "uncontradicted."

■ Plaintiff argues that the trial court's award for attorneys' fees was so inadequate as to constitute an abuse of discretion. We cannot agree. At the conclusion of the trial, the court rendered an oral opinion disposing of the various matters that were involved, including the amount of fees that might properly be awarded plaintiff's counsel. It is quite apparent that the court recognized its duty and responsibility to award proper fees for the professional services that were reasonably necessary in this case. He was, however, critical of the waste of time in the trial of the case and in the rendition of services that did not appear to be either necessary or justified. In arriving at a fee, the court stated, *inter alia*: ". . . I have gone through patiently and with some care all of the proceedings before me and tried to fix a fair fee for each necessary step. . . .

"I have assigned to the different tasks what I believe to be a fair rate of charge. I certainly am not adopting any $125 an hour for any time expended in a divorce case of this sort. It is

not a case that in my view demands any type of service that could not be rendered by an experienced and energetic lawyer whose charges are far less than indicated.

"In doing this I have also held it necessary to determine how much of this court's time has been fruitfully occupied."

An examination of the record supports the trial judge's appraisal of the case and his observations with respect to the trial.

The trial court awarded plaintiff's counsel a fee of $11,000. In light of the total circumstances, this court cannot say that such a fee was not reasonable. Certainly, there was no abuse of discretion on the part of the trial court in fixing the fee at this amount.

Plaintiff also argues that the court committed an abuse of discretion in the award of costs. Prior to the trial, the court appointed an accountant to go over the financial affairs of the parties and to make a report to the court, the expense thereof to be paid by the defendant. The accountant made such a report which the court thought was "quite helpful." A fee of $3,500 was awarded for the accountant's services. Plaintiff's attorneys incurred more than $7,000 in additional costs. Over $4,000 of this amount was incurred for investigative services. The court analyzed the items with respect to expenses other than investigative charges and came to the conclusion that $1,991.21 was "ample to cover those expenses." The court rounded off this item at $2,000. The court only allowed $1,000 on account of investigative services. It thus appears that the court allowed $3,000 for expenses and investigators' fees. No question appears to be raised as to the allowance of $2,000 for expenses. Plaintiff's complaint therefore centers on the failure of the court to allow the additional investigative expense. We find no basis for holding that the court abused its discretion in fixing the costs and expenses at $3,000.

We come now to the propriety of the order awarding $150 per month for the support of Terry who was approximately 10 years of age at the time of the trial. The record reveals that she is the beneficiary of a trust set up by her grandfather which produces an annual income of some $2,200. Terry is also the beneficiary of another trust set up by an aunt that produces approximately $500 of income annually.

The trial court took the position that Terry's trust fund income might properly be taken into account in determining the child's needs and therefore the amount defendant should be required to pay for her support, maintenance and educa-

tion. The position of the trial judge was made clear in his oral decision immediately following the submission of the case. He stated: ''As I conceive the law to be, despite the fact that Terry has a very comfortable income by reason of gifts and the trust of her grandfather, that does not erase the obligation of both of her parents to support her. I do believe that I may consider her circumstances and her prospective circumstances in fixing the amount which Mr. Lakenan should pay and in doing so having in mind the provision made by her grandfather for her private schooling which seems to be enjoyed now.

''It seems to me that an award of $150.00 a month on account of the support of Terry is proper. . . .''

In order to clarify the use that might be made of the income from the trust created by Terry's grandfather, paragraph X of that instrument was read into the record. It empowers the trustee: ''To distribute or expand [*sic*] all or any part of the accumulated income or the trust principal to or for the benefit of the Beneficiary whenever the Trust [*sic*] in his sole and absolute discretion shall determine that such distribution or expenditure is necessary for the proper education, support or maintenance of the Beneficiary and in any such event the Trustee shall be fully protected by the receipt of the Beneficiary or his [*sic*] guardian, or of the parent receiving and expending such funds for the benefit of said Beneficiary, or of the persons conserving such benefit.''

Terry has been attending a private school. Her father testified that it had been his practice since the establishment of the trust to pay Terry's tuition at the private school from this fund and also to pay for certain uniforms and certain lessons that she required and other miscellaneous items of expense in connection with her school attendance.

It is thus apparent (1) that the trust document authorizes the use of the trust funds for Terry's education, and (2) that such funds have been used consistently for that purpose. It therefore appears that the court exercised a reasonable discretion in treating this trust fund as a part of the pattern of Terry's educational development, and therefore properly to be taken into account in determining the additional amount defendant should be required to pay for her support and maintenance.

In seeking a reversal on this point plaintiff concedes: ''We know of no case which expressly holds that in the context of a divorce proceeding, the child's separate income does not

reduce the amount of support the father would otherwise be required to pay." Nonetheless, the subject is not without precedent. ▮ The general rule seems to be that if a trust is created for the specific purpose of the education, support, and maintenance of a child, at least the income of such a trust may be so expended without regard to the parents' ability to provide support and maintenance. (*Cleveland Clinic Foundation* v. *Humphrys* (6th Cir. 1938) 97 F.2d 849 [121 A.L.R. 163, 175]. See Annotation, 121 A.L.R. 197-198.)

The judgment is affirmed.

Fleming, J., concurred.

ROTH, P. J.—I concur in the judgment except insofar as it relieves a parent who has financial ability from the *full* obligation of child support. In my opinion separate income of a child derived from trusts established for such child by third parties should not be taken into consideration to enable a parent with financial ability to meet the full obligation of the child's support and education.

A petition for a rehearing was denied January 3, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1968.