Opinion
RICHARDSON, J.
In this appeal we consider whether a court may take cognizance of a child’s independent income in determining the parent’s obligation of support. We conclude that it may do so, but only in a limited, and restricted sense and that a solvent parent may not entirely discharge his or her support obligation by resort to the child’s independent income.
Plaintiffs, Scott and Marc Armstrong, ages 19 and 16, respectively, at the time of the commencement of this action are the only children born to the marriage, since dissolved, of Henry Armstrong (defendant) and Charmaine Armstrong. Plaintiffs were income beneficiaries of a testamentary trust established by their paternal grandfather in 1956. Under the terms of the trust their interest terminated on December 31, 1972.
Charmaine obtained an interlocutory decree of divorce from defendant in 1959, and a final decree in 1960. Prior to the entry of the interlocutory judgment, the parties executed a property settlement agreement which provided that, since each plaintiff received approximately $84 per month from the trust, defendant would pay monthly the difference bétween the amount each child received from the trust and. *946 $125, and in the event and to the extent the sum derived from the trust exceeded $125, defendant was to receive a corresponding credit against his support obligations for succeeding months. Defendant also agreed to pay all extraordinary medical and dental expenses incurred by the children. The terms of the agreement in substance were incorporated in the interlocutory decree of divorce.
In 1973 plaintiffs sued their father for past child support and for misappropriation of their trust assets. They sought general, damages, declaratory relief, a temporary restraining order, counsel fees, costs and a preliminary injunction against distribution to defendant of a $50,000 trust asset. The trial court sustained both general and special demurrers interposed by defendant, concluding that it was proper for the court to recognize and give full credit to the plaintiffs’ independent income received from the trust in determining defendant’s support obligations. Plaintiffs declined to amend their complaint and instead took this appeal after their complaint was dismissed.
Plaintiffs’ complaint contains four causes of action. In the first they allege that they are the sons of defendant and that defendant had both the duty and ability financially to support them; that the property settlement agreement incorporated in the divorce decrees obligated defendant to pay child support of $125 per month per child (in passing we note the material variance between this allegation and the provisions of the support order, incorporated as an exhibit to the complaint, which directs defendant to pay only the difference between the trust income and $125, see Able v. Van Der Zee (1967) 256 Cal.App.2d 728, 734 [64 Cal.Rptr. 481]); that defendant illegally agreed with Charmaine to use plaintiffs’ trust income to reduce his monthly support obligations; and that he has failed to pay the $125 per month per child which he was obligated to pay. The second cause of action incorporates the first and alleges that in violation of his fiduciary obligations as plaintiffs’ natural guardian, defendant “misappropriated for his own use payments from the trust intended for plaintiffs’ benefit.” The third cause of action seeks declaratory relief alleging a dispute between plaintiff children and defendant about whether defendant’s support obligation to plaintiffs could be partially satisfied by the amounts received by plaintiffs in their own right from the trust. The fourth cause of action, alleging defendant’s insolvency, asks for injunctive relief to prevent distribution by the trust to defendant of his own $50,000 beneficial interest.
*947 1. Parental Duty of Support
As we have noted, the principal issue in the case is whether a trial court in determining the nature and extent of a parent’s support obligation may consider the child’s own independent income.
Resolution of the issue involves application of certain well-settled general principles. There is a statutory obligation of child support imposed on parents. (Civ. Code, §§ 242-243, 4700.) This obligation continues notwithstanding the parents’ lack of custody (Kresteller v. Superior Court (1967) 248 Cal.App.2d 545, 546-548 [56 Cal.Rptr. 771]), and is unaffected by any agreement between the parents (Elkind v. Byck (1968) 68 Cal.2d 453, 457 [67 Cal.Rptr. 404, 439 P.2d 316]; Davidson v. Superior Court (1964) 226 Cal.App.2d 625, 629-630 [38 Cal.Rptr. 274], hg. den.). When a child support agreement is incorporated in a child support order, the obligation created is deemed court-imposed rather than contractual, and the order is subsequently modifiable despite the agreement’s language to the contrary. (Civ. Code, § 4811; see generally, 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 133, p. 4650.) However, the effect of the modification of the original order is prospective only. (Civ. Code, §§ 4700, 4811; Singer v. Singer (1970) 7 Cal.App.3d 807, 813 [87 Cal.Rptr. 42].) The extent of the parental support obligation is left to the sound discretion of the court (Primm v. Primm (1956) 46 Cal.2d 690, 694 [299 P.2d 231]; Gudelj v. Gudelj (1953) 41 Cal.2d 202, 209 [259 P.2d 656]) and the trial court’s order will not.be disturbed on appeal unless that discretion is abused. (Brockmiller v. Brockmiller (1943) 57 Cal.App.2d 623, 625 [135 P.2d 184].)
Notwithstanding the broad latitude permitted the trial court in support matters, and acknowledging the existence of conflicting views, we conclude that the soundest and most substantial statutory and judicial authority supports the rule that parents bear the primary obligation to support their child and that resort may be had to the child’s own resources for his basic needs only if the parents are financially unable to fulfill that obligation themselves. We consider some of these authorities.
California has adopted the Uniform Civil Liability for Support Act, contained in' Civil Code section 241 et. seq. Sections 242 and 243 impose upon both parents the duty to support their children. Guidance for the application of these sections is found in section 246, which authorizes the court to consider the child’s need, relative wealth, and income in determining “. . . the amount due for support...” (Italics added.) While *948 section 246 allows consideration of the child’s independent wealth and income in fixing the amount of the support obligation, this section does not authorize the court to relieve entirely a financially capable parent of his or her obligation to support the child. The section permits reduction in the amount of support but it neither expressly nor by necessary implication frees the parent of the continuing obligation, which we deem primary, to provide the child with at least the basic necessaries of life.
Section 1504 of the Probate Code reinforces this conclusion. It provides that if a minor “has property, the income of which is sufficient for his or her support, maintenance and education in a manner more expensive than his or her parents can reasonably afford, ...” (italics added) then the expenses of support, maintenance and education may be defrayed out of the child’s income, in whole or in part, in such amounts as the court deems reasonable. Section 1504 confirms the view that although the parent, if financially able, must provide for the child’s basic, minimum support needs, the child’s income may be used to supplement the parent’s contribution in order to permit the child to live in a more “expensive” manner by way of special education, travel, etc. It follows as a corollary, however, that only if the parent is unable to provide minimum-level support should the child’s outside income relieve the parent entirely of his support obligation.
Numerous appellate decisions add strength to the foregoing interpretation of the statutes. As expressed in In re Carboni (1941) 46 Cal.App.2d 605 [116 P.2d 453], “The law is well-settled that the primary duty to support a minor rests upon his parents, and that the estate of the minor can only be resorted to where the parents are unable to fulfill the obligation in whole or in part. [Citations.]” (Id., at p. 613.) Several other cases, both before and after Carboni, are in accord: In re Marriage of Cosgrove (1972) 27 Cal.App.3d 424, 432 [103 Cal.Rptr. 733]; Hills v. Hills (1966) 245 Cal.App.2d 578, 580 [54 Cal.Rptr. 89]; see also Howe v. Howe (1928) 206 Cal. 1, 2-3 [272 P. 751]; Fagan v. Fagan (1941) 43 Cal.App.2d 189, 198 [110 P.2d 520]; In re Keck (1929) 100 Cal.App. 513, 514 [280 P. 387], Contrary dicta is contained in others: See Nunes v. Nunes (1964) 62 Cal.2d 33 [41 Cal.Rptr. 5, 396 P.2d 37]; Rosher v. Superior Court (1937) 9 Cal.2d 556 [71 P.2d 918]; Black v. Black (1928) 203 Cal. 173 [263 P. 234]; Mattos v. Correia (1969) 274 Cal.App.2d 413 [79 Cal.Rptr. 229]; Moore v. Moore (1969) 274 Cal.App.2d 698 [79 Cal.Rptr. 293]; Van Diest v. Van Diest (1968) 266 Cal.App.2d 541 [72 Cal.Rptr. 304]; Lakenan v. Lakenan (1967) 256 Cal.App.2d 615 [64 Cal.Rptr. 166]; Levy v. Levy (1966) 245 Cal.App.2d 341 [53 Cal.Rptr. 790]; McClellan v. McClellan (1958) 159 *949 Cal.App.2d 225 [323 P.2d 811]; White v. White (1927) 83 Cal.App. 356 [256 P. 579]. We find that the contrary cases are distinguishable, and in only one of them (Lakenan v. Lakenan) does the court affirmatively sanction the avoidance by a parent of all obligations to support through resort to the child’s separate income. In Lakenan, unlike the case before us, the express purpose of the trust in question was contribution to the support and maintenance of the child. In the absence of such an evident purpose, we decline to impute to a trustor the intent to relieve a parent of his or her support obligation.
The general rule in other states appears to be that “the primary obligation of a parent to support his minor children if he is able to do so is not affected by the fact that the child may have his own separate property, or his own income derived from property, trust, or annuity.” (59 Am.Jur.2d, Parent and Child, § 77, p. 169, and cases cited; see Annot. 121 A.L.R. 176.) The same authorities recognize only two situations in which resort to a child’s estate may be proper: (1) where authorized by the terms of the instrument creating the estate; and (2) where authorized by statute. (59 Am.Jur.2d, supra, at pp. 169-170.) In the instant case, the trust instrument is silent regarding the use of trust income to contribute to plaintiffs’ support, and, as discussed above, California statutes permit resort to the child’s own income or estate only in a limited and restricted sense.
Sound public policy favoring child support (see Williams v. Williams (1970) 8 Cal.App.3d 636, 639 [87 Cal.Rptr. 754]) and the statutory authority to which we have previously referred, in combination, justify the rule expressed in the Carboni line of cases that a parent possessing adequate financial resources has a duty to provide his or her child with basic support regardless of the child’s independent resources. Such a rule serves the dual purposes of assuring that a child’s independent income is preserved for use of the child during his or her adult years, and at the same time permitting, in an appropriate case, such income to be used to. supplement the parents’ contribution so that the child might enjoy a higher standard of living during. minority than the parents could otherwise afford. In the absence of a clear contrary trust purpose or the inability of the parents reasonably to provide any support, we conclude that this approach both respects the parents’ statutory obligations of support mandated by Civil Code sections 242, 243, and maintains the flexibility authorized to trial courts by Civil Code section 246 and Probate Code section 1504.
*950 2. A vailability of Collateral A ttack
Although the trial court erred in assuming that defendant properly could escape his support obligation by resort to plaintiffs’ trust fund for their entire support needs, defendant urges that, nevertheless, plaintiffs are not entitled collaterally to attack the judgment which established the support obligation. We agree.
As plaintiffs concede, and as we have previously noted (ante, p. 947), a support order may not be retroactively modified. (Civ. Code, §§ 4700, 4811; Parker v. Parker (1928) 203 Cal. 787, 795-796 [266 P. 283]; In re Marriage of Ford (1972) 24 Cal.App.3d 62, 65 [100 Cal.Rptr. 817]; Singer v. Singer, supra.) Plaintiffs assert, however, that they may collaterally attack any judgment which, on the face of the record, is in excess of the court’s jurisdiction. Plaintiffs specifically maintain that since the judgment is facially defective with respect to defendant’s support obligation (there being neither allegation nor finding that defendant was unable to support plaintiffs), a collateral attack should be permitted.
Plaintiffs confuse errors in excess of jurisdiction with errors of substantive law which are within the court’s jurisdiction. Collateral attack is proper to contest lack of personal or subject matter jurisdiction or the granting of relief which the court has no power to grant (Swycaffer v. Swycaffer (1955) 44 Cal.2d 689, 693 [285 P.2d 1] [default ■ judgment in excess of relief demanded by prayer]; Michel v. Williams (1936) 13 Cal.App.2d 198, 201 [56 P.2d 546] [court without power to award costs]; see 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment, § 10, pp. 3590, 3591). Nonjurisdictional errors, however, are not appropriate procedural targets within this context. Thus, a failure to state a cause of action (Estate of Keet (1940) 15 Cal.2d 328, 334 [100 P.2d 1045]), insufficiency of evidence (Estate of Kay (1947) 30 Cal.2d 215, 218-219 [181 P.2d 1]), abuse of discretion (Howard v. Superior Court (1944) 25 Cal.2d 784, 788-789 [154 P.2d 849]), and mistake of law (Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 114-116 [101 Cal.Rptr. 745, 496 P.2d 817]; Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control (1961) 55 Cal.2d 728, 731 [13 Cal.Rptr. 104, 361 P.2d 712]; Leach v. Leach (1959) 172 Cal.App.2d 330, 332 [341 P.2d 758]; Estate of Gardiner (1941) 45 Cal.App.2d 559, 562 [114 P.2d 643]), have been held nonjurisdictional errors for which collateral attack will not lie. (See generally, 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, §§ 180-217, pp. 708-750.) The error of which plaintiffs in this case complain does not reach the power of the court to act, but concerns *951 instead a mistaken application of law. Thus the judgment may not be collaterally attacked.
Moreover, even were we to assume that the defect in the divorce judgment was jurisdictional, nevertheless, in the absence of unusual circumstances “collateral attack will .not be allowed where there is fundamental jurisdiction [i.e. of the person and "subject matter] even though the judgment is contrary to statute.” (Pacific Mut. Life Ins. Co. v. McConnell (1955) 44 Cal.2d 715, 727 [285 P.2d 636].) Where some of the parties have relied on, or changed their position in accordance with the former judgment, a court may deny collateral attack. (See Frank v. Frank (1969) 275 Cal.App.2d 717, 722 [80 Cal.Rptr. 141]; Farley v. Farley (1964) 227 Cal.App.2d 1, 11 [38 Cal.Rptr. 357].) Defendant in the present case made payments pursuant to a judicial order, an order which was 14 years old at the time of the present action. Where, as here, the complaint contains no specific allegations of fraud, concealment, or other intentionally wrongful conduct, to hold defendant liable now for additional support obligations chargeable to him in the past would be manifestly unjust.
Plaintiffs argue that the interlocutory and final divorce judgments should not be binding on them because they were not parties to the action giving rise to the judgments. The doctrinal reach of the res judicata bar extends, however, to those persons “in privity with” parties. (Bernhard v. Bank of America (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) As has been said, in considering application of the doctrine, courts examine the practicalities of the situation and attempt to determine whether plaintiffs are “sufficiently close to the original case to afford application of the principle of preclusion.” (People ex rel. State of Cal. v. Drinkhouse (1970) 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773].) We have previously held that privity exists where the person involved is “ ‘. . . so identified in interest with another that he represents the same legal right.’ ” (Zaragosa v. Craven (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461]; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 226, p. 3359.) In the present case, plaintiffs’ mother was entrusted with their care and custody and was a proper representative of their interests. While in similar situations we can conceive of a commingling of interests of parent and child in the negotiation of a marital dissolution agreement to the degree that the future interests of a child are clearly and deliberately subordinated to the present interests and advantages of a parent, the record before us discloses no such circumstances. For this reason, we conclude that plaintiffs are bound by the judgment in the *952 divorce action to which their mother was a party. (Stevens v. Kelley (1943) 57 Cal.App.2d 318, 323 [134 P.2d 56]; Murdock v. Eddy (1940) 38 Cal.App.2d 551, 553-554 [101 P.2d 722]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 229, pp. 3361-3362.)
Plaintiffs have not alleged that defendant committed fraud in the divorce action, a circumstance which might independently justify collateral attack. (Code Civ. Proc., § 473; Miller v. Miller (1945) 26 Cal.2d 119 [156 P.2d 931]; In re Marriage of Warner (1974) 38 Cal.App.3d 714 [113 Cal.Rptr. 556]; Rice v. Rice (1949) 93 Cal.App.2d 646 [209 P.2d 662].) Nor is this a case in which only prospective relief is sought. (See Adamson v. Adamson (1962) 209 Cal.App.2d 492 [26 Cal.Rptr. 236]; Adoption of Stroope (1965) 232 Cal.App.2d 581 [43 Cal.Rptr. 40].) Instead, plaintiffs seek to relitigate the validity of support orders now 15 and 16 years old in order to obtain a reversal with full retroactive effect.
As noted above, modification of child support orders cannot ordinarily be given retroactive effect. In the light of all of the circumstances of this case and in the interests of finality of judgments, we will not permit plaintiffs in this case to achieve the same effect through collateral attack.
The judgment is affirmed.
Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.