[Civ. No. 19643. Third Dist. Feb. 28, 1983.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Respondent, v. RAYMOND LEGO et al., Defendants and Appellants.

COUNSEL

James S. Thomson and Muenzberg & Thomson for Defendants and Appellants.

Charles T. Van Deusen, Jack F. Fallin, Jr., F. Ronald Laupheimer and Carr, Kennedy, Peterson & Frost for Plaintiff and Respondent.

OPINION

**EVANS, Acting, P. J.**—In this appeal, Pit River Indians claim aboriginal title to certain land in Shasta County.[1] The claim has been unsuccessfully litigated many times before. Defendants, who call themselves the Legitimate Pit River Indian Tribe (the Tribe), took possession of real property, setting up a trailer, clearing and excavating in some areas, and cutting down three trees. Plaintiff Pacific Gas and Electric Company (P.G.&E.), the record owner of the property, filed a complaint for ejectment, damages, and quiet title. The Tribe answered, claiming aboriginal title. The court sustained P.G.&E.'s demurrer to this defense, on the ground that the Tribe was collaterally estopped from denying that its aboriginal title had been extinguished. However, the Tribe was allowed to deny P.G.&E.'s title (on grounds other than aboriginal rights), and

---

[1]"Aboriginal title" may be defined as the interest Indians possess in land, based solely upon the rights acquired by them as the original inhabitants of the land, and not upon statute, treaty, or grant by or with the United States or any prior sovereign. (Annot. (1979) 41 A.L.R.Fed. 425, 428, fn. 2.)

the suit went to trial. The court found P.G.&E. to be the sole owner of the property in fee; it quieted title against the Tribe and awarded P.G.&E. $448.75 in damages.

The substance of the Tribe's argument on appeal is that it retains aboriginal title to the land in question: "Appellants do not contend that the federal government does not have the power to extinguish aboriginal title, but appellants do contend that since the federal government formulated and acted upon the concept of aboriginal title, passed laws limiting the methods by which aboriginal title could be extinguished, and never extinguished aboriginal title in California by any of these acceptable methods, the Legitimate Tribe's title has not been extinguished." In a lengthy brief the Tribe purports to distinguish—but more precisely simply challenges—the many federal precedents adverse to its position.

" 'Every American . . . knows that the [Indian] tribes of this continent were deprived of their ancestral ranges by force and that, even when the Indians ceded millions of acres by treaty . . . , it was . . . the conquerors' will that deprived them of their land.' [Citation.] However, this court is precluded by law from questioning the justness of these actions. [Citation.] '[O]ur task here is a narrow one. . . . [W]e cannot remake history.' [Citation.]" (*In re Wilson* (1981) 30 Cal.3d 21, 36 [177 Cal.Rptr. 336, 634 P.2d 363].) We must reject their claim and affirm the judgment.

I

■ The identical challenge has previously been resolved by the federal courts and most recently by the California Supreme Court in *In re Wilson, supra,* 30 Cal.3d 21. There at page 32, in dealing with the Indians' aboriginal rights to occupancy of the land and title, the court stated, "A review of the 'century-long course of conduct' by which the federal government extinguished the Pit River Indian title (*U.S.* v. *Gemmill, supra,* 535 F.2d at p. 1149) leads inescapably to the conclusion that the Indians' occupancy rights have been extinguished in their entirety. To relate the manner in which this extinguishment was carried out is to set forth a dismal chapter in the history of this nation and in the history of this state." The court went on "The federal government's course of conduct unquestionably establishes that extinguishment of the Pit River Indian title was absolute and unconditional." (*Id.,* at p. 35.)

The defendants cannot now escape the compulsion of past decisions and particularly *In re Wilson, supra,* 30 Cal.3d 21, and *United States* v. *Gemmill* (9th Cir. 1976) 535 F.2d 1145, 1148-1149,[2] by merely establishing a new name for

---

[2]In *United States* v. *Gemmill, supra,* 535 F.2d 1145, Pit River Indians were charged with trespass and theft of timber from Shasta Trinity National Forest. They argued the Pit River In-

the tribe or a faction of that tribe. Ancient rights, if they exist at all, pertain to the individuals, not a new designation for the descendants of those in whom the aboriginal title originally vested. (See also *Pitt River Tribe of Indians* v. *Pacific Gas & Electric Co.* (Oct. 14, 1975) 3 Civ. 14408 [unpub. opn.].)

The Tribe contends our previous decision and impliedly *In re Wilson* cannot have collateral estoppel effect here because the Tribe was not in privity with the tribe in that case. The Tribe is wrong.

"Traditionally [privity] has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. [Citation.] The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel. [Citations.]

"Notwithstanding expanded notions of privity, collateral estoppel may be applied only if due process requirements are satisfied. [Citations.] In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [Citation.] *Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.* [Citations.]" (Italics added; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098]; see also *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 947-948 [119 Cal.Rptr. 139]; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 951 [126 Cal.Rptr. 805, 544 P.2d 941].)

The Indians living along the Pit River and its tributaries organized into a Pit River Indian Tribe well over a century ago; that tribe dealt with the United States government throughout most of this century, and we assume that tribe brought suit in *Pitt River Tribe*. "The Legitimate Pit River Indian Tribe" did not form until September 18, 1976, when the government's tender of settlement

---

dian Tribe had aboriginal title to the land, making many of the arguments the Tribe now makes. The circuit court traced the history of the government's dealings with the Pit River Indians and concluded, "This century-long course of conduct amply demonstrates that the Pit River Indian title has been extinguished." (P. 1149.)

money drove a "cutting wedge" into the unified tribe. It is significant that the Legitimate Tribe formed after this court's *Pitt River Tribe* decision had been filed, and after it had been denied review by the California (Dec. 11, 1975) and United States (May 19, 1976) Supreme Courts. When *Pitt River Tribe* was decided, the members of what is now the Legitimate Tribe were "sufficiently close" to the tribe that was party to that case, they received adequate representation, and they should have expected to be bound by that decision. To allow a new tribe to form and bring the very same challenge would only promote vexatious litigation and undermine the finality and consistency of judgments.

## II

In a throw-away argument, the Tribe claims there was insufficient evidence that its members committed the waste of which P.G.&E. complained, essentially because P.G.&E.'s only witness was unable to identify the individual defendants as the persons responsible. Yet the Tribe's answer admitted occupation of the land, and did not deny the alleged acts but claimed authority to do them. P.G.&E. did not do the acts; there was sufficient evidence defendants did.

The Tribe also contends P.G.&E. failed to prove its chain of title, since it did not show a treaty with the Pit River Indians which would validate the original patent from the United States government. However, since the Pit River Indians' aboriginal title was not extinguished by treaty (see *In re Wilson, supra,* 30 Cal.3d at pp. 32-35), there was obviously no treaty to present.

The judgment is affirmed.

Blease, J., and Miller, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.