[No. A061518. First Dist., Div. Five. July 12, 1994.]

In re the Marriage of WENDY and GARRY CARTER.
WENDY NEUSTRUP, Respondent, v.
GARRY CARTER, Appellant.

**COUNSEL**

Garry Carter, in pro. per., for Appellant.

Guadagni, Flax & McGrath and Patrick McGrath for Respondent.

**OPINION**

**KING, J.**—In this case we hold that when ordering child support the trial court lacks discretion to vary from the presumptively correct amount, calculated by applying the algebraic formula in the statute, unless one or more of the statutorily enumerated rebuttal factors is found to exist.

Garry Carter, in propria persona, appeals from an order denying his motion to modify child support and to order spousal support. He claims the trial court failed to follow the Statewide Uniform Guidelines for child support (Civ. Code, § 4720 et seq.[1]), and erroneously ruled his spousal support claim was moot.

The marriage of Garry and Wendy Carter (now Neustrup)[2] was dissolved in January 1990. On February 26, 1991, the trial court issued a judgment on reserved issues, ordering Garry to pay Wendy child support in the amount of $300 per month ($150 per child). The court further ordered that neither party receive spousal support, but reserved jurisdiction on this issue until July 31, 1992, at which time jurisdiction over this issue terminated. We affirmed the judgment in an unpublished opinion filed (*In re Marriage of Carter* (May 27, 1992) A053421).

On June 17, 1992, Garry filed an order to show cause for modification of the prior support orders. In her responsive declaration, Wendy requested increased child support. After a hearing on September 29, 1992, the trial court filed its findings: Wendy's net monthly disposable income was $3,423,

---

[1]All further statutory references are to Civil Code former sections 4720 and 4721 (now Fam. Code, § 4050 et seq.).

[2]For ease of reference, we will refer to the parties by their first names, Garry and Wendy. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

while Garry's had fluctuated over the previous nine months between $1,600 and $2,200; the "present schedule" would require him to pay between $368 and $500 per month, i.e., more than the amount he sought to decrease. As to spousal support, the court found the question was moot as jurisdiction had terminated on July 31 by the terms of the prior order.

On October 14, 1992, Garry filed a document entitled "Motion to reconsider/request for statement of decision/clarification of basis for denial of motion to modify." After a hearing on November 10, the trial court denied the motion for reconsideration. The court said the fact that Garry and Wendy shared joint custody (contrary to its prior finding that Garry was the "supporting parent") would not change its child support ruling. The court also found Garry's request for a statement of decision was untimely filed.

On December 11, Garry wrote to the trial court requesting copies of the Dissomaster[3] printouts used in arriving at its decision. On December 18, he filed motions to set aside the judgment, to reconsider, to provide the Dissomaster printouts, and to stay enforcement. After a hearing, the trial court denied the motion for reconsideration and the "request for correction of child support findings." The court stated that calculations based on its net income findings, "pursuant to Civil Code section 4720 and on the Dissomaster," supported its decision to deny Garry a reduction in child support. Five pages of Dissomaster printouts were attached to the ruling.[4]

---

[3]"For assistance in setting child support and temporary spousal support, two computer programs appear to be used by most family law judges in California. 'Dissomaster' was developed by Stephen Adams, Esq., and is produced by California Family Law Reports, while 'Supportax' was developed by George Norton, Esq., and is produced by The Rutter Group. The computer programs determine child support according to the statutory formula and calculate temporary spousal support as provided by local rules for the ordinary case. The benefit of the programs is that they enable a family law judge to input appropriate factual information about the income of the parties and have temporary spousal support computed in accordance with local rules, automatically taking into account the tax consequences of the order to each party. Unusual factors affecting temporary spousal support, and rebuttal factors to the statutory formula for child support, require the judge to make adjustments to the calculations made by the basic computer program." (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 3 [17 Cal.Rptr.2d 480].)

[4]We attach as an exhibit a copy of the Dissomaster printout apparently used by the court, which lists the net monthly disposable incomes of the parties found by the court. Based upon the court's findings as to income and timeshare the presumptively correct amount of child support is $367 per month payable by Wendy, as the higher income parent, to Garry. When the child support statute was being debated in the Legislature, one of the arguments used was that low child support orders led to the feminization of poverty. That is one reason why the Legislature adopted a formula which significantly raised the amounts of child support from that being ordered by many courts. Although the result in cases where the mother is the higher earner but is receiving child support, was not anticipated, it does, in the current politically correct lingo, result in gender equality.

Concurrently, the court filed findings and an order after hearing. It found Wendy's net monthly disposable income was $3,423 and Garry's $2,200; they shared child custody equally. The court denied Garry's request for modification of child support, motion for reconsideration, and request for statement of decision, and declared the right of either party to spousal support terminated.

I

Garry challenges the denial of his motion to modify child support, on the ground the trial court failed to apply the formula in the statewide guideline.

The formula amount is "intended to be presumptively correct in all cases, and only under *special* circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4720, subd. (a)(3)(K), italics in original.) Thus, there is a rebuttable presumption the amount of child support established by the formula set forth in section 4721, subdivision (a), is the correct amount to be ordered. (§ 4721, subd. (d).) Factors which may be used to rebut the presumption, none of which were found to exist here, are set out in subdivision (e) of section 4721. Contrary to Wendy's suggestion, a trial court no longer has the broad discretion in ordering child support which it had prior to the enactment of the new statutory scheme effective July 1, 1992 (see, e.g., *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941]).

It is undisputed that in this case the trial court failed to order child support in accordance with the formula in the guideline. It had no discretion to do so. It denied Garry's modification motion based on a finding that the guideline "would require him to pay" more than the $300 he was already paying. The court neither ordered Garry to pay the formula amount, nor understood that if the formula results in a positive number the higher earner (Wendy) should pay that amount to the lower earner (Garry).[5] (§ 4721, subd. (b)(5)). The trial court did not find any special circumstances justifying an

---

[5]The formula adopted by the Legislature to provide the presumptively correct amount of child support creates problems which the Legislature may not have forseen since it requires the use of a computer and appropriate software.

First, not all judges have computers available for hearings or trial, and even if they do, unless they are in a family law assignment they may not have the software program for computing child support. Indeed, in smaller courts judges on the court may be assigned to hear a family law order to show cause or the trial of a marital dissolution case with minor children in which they are required to issue orders for child support, yet not have the computer capability to do so. In larger courts with full-time family law judges, someone without the computer know-how may have to fill in for them because of illness or vacation. Also, in larger courts trials of marital dissolution actions are often assigned to civil trial

order below the guideline (§ 4720, subd. (a)(3)(K)). It did not find any of the specified factors to rebut the presumption that the amount established by the formula was the correct amount. The trial court erred as a matter of law in denying Garry's modification motion and failing to order child support payable by Wendy to him in accordance with the formula in the guideline.

Wendy argues Garry did not demonstrate the change of circumstances necessary to support modification of the prior order (*In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 970 [236 Cal.Rptr. 706]). The statute specifies its enactment shall constitute a change of circumstances for the purpose of modifying any child support order entered prior to its operative date, July 1, 1992. (§§ 4720, subd. (a)(1), 4721, subd. (s).)

Garry also argues the trial court's determination of the parties' net monthly disposable income was not based on the evidence. The figure for Wendy's income was taken from her July 7, 1992, income and expense declaration. Garry contends the trial court did not consider contradictory or inconsistent evidence, and/or drew incorrect inferences from conflicting evidence. His argument runs afoul of the substantial evidence rule since there is substantial evidence supporting the findings of the trial court. (See, e.g., *Chodos* v. *Insurance Co. of North America* (1981) 126 Cal.App.3d 86, 97 [178 Cal.Rptr. 831].)[6] With regard to his own income, Garry does not

---

departments where the judges do not have the computer software necessary to compute child support pursuant to the statutory formula. Even if the computer resources are available, the judge may not be computer literate or may not understand how to use the software program.

Finally, as happened here, retired judges sitting on assignment may be assigned family law cases with minor children in which they must determine orders for child support. Retired judges are even less likely to understand computers, the use or reading of the software program, the child support formula, or all of the above.

Thus, we are left with a process for determining child support not understood by the legislators who enacted it (see *In re Marriage of Fini, post*, pp. 1033, 1041, fn. 7 [31 Cal.Rptr.2d 749]), judges not regularly handling family law cases who are assigned one and do not understand the formula and who may not have the computer resources or the computer know-how to compute it, and parties with child support orders imposed upon them by a formula which no one can explain to them. Even Lewis Carroll, when writing Alice in Wonderland, could not have contemplated such a bizarre situation. Historically, although California has been in the forefront of the development of family law, no other state uses California's approach to child support. It is truly a sad state of affairs, when one considers that child support is a critically important financial issue affecting the lives of hundreds of thousands of parents and children in California.

[6]Garry asks us to make our own factual determinations as permitted by Code of Civil Procedure section 909. This case does not come within the very narrow limits of that statute's applicability (see *Philippine Export & Foreign Loan Guarantee Corp.* v. *Chuidian* (1990) 218 Cal.App.3d 1058, 1090 [267 Cal.Rptr. 457]), nor has Garry complied with California Rules of Court, rule 23(a) (see *Pomatto* v. *Sarten* (1963) 214 Cal.App.2d 747, 751 [29 Cal.Rptr. 721]).

deny there was substantial evidence to support the trial court's determination, but simply disagrees with the inferences it drew therefrom.[7]

## II

██ Garry also contends the trial court erred in finding it no longer had jurisdiction to award spousal support. The February 26, 1991, judgment stated that the court reserved jurisdiction to award spousal support to either party until July 31, 1992. Garry's motion for spousal support was heard on September 29, 1992, and the trial court issued its finding that the issue was moot on October 7.

Garry argues the finding was erroneous because he filed his order to show cause for spousal support in June, before the termination of jurisdiction. The reservation of jurisdiction specified, however, that both the court's jurisdiction to award and the parties' right to receive spousal support terminated on July 31. No possible reading of this provision would permit the trial court to issue, after July 31, an order for spousal support to be paid after July 31. None of the cases Garry cites contains such language. Garry relies upon our statement that he could "seek modification of the order before the termination date." (*In re Marriage of Carter, supra.*) In light of the unambiguous wording of the judgment we affirmed, our phrase "before the termination date" must be read to mean the modification itself must be made prior to the date the court loses jurisdiction.

Rather than the language used in the judgment here, preferable language would be that used in a "Richmond" order stating that jurisdiction of the court over the issue of spousal support ends on a stated date, unless a motion for modification is filed prior to that date. (See *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257 [264 Cal.Rptr. 210], *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645 [235 Cal.Rptr. 587], *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381].) That language would protect against a failure to serve or have a hearing and decision prior to the jurisdictional cutoff as occurred here. In any event, given the fact that Garry will be receiving $367 for child support from Wendy, the financial circumstances of the parties would not have justified or permitted a spousal support order, since the money available to the parties will equalize their standards of living. (§ 4720, subd. (a)(3)(F), *In re Marriage of Fini, supra,* [*post,* p. 1043, fn. 11].)

The judgment is reversed and the cause is remanded to the trial court with directions to order Wendy to pay Garry child support in the amount of $367

---

[7]Moreover, a good part of this argument rests on documents outside the record, as to which *Garry's motion* to augment was denied.

in accordance with the formula in the statutory child support guideline, retroactive to the date of the order from which this appeal was taken, and to fix the amounts of any interim child support paid or unpaid along with a payment schedule for any arrearages accrued or any overpayments made. In all other respects the judgment is affirmed. Garry is awarded costs on appeal.

Peterson, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 1994.

## APPENDIX

File: DissoMaster(tm) V.93-1

| | H | W | DissoMaster(tm) | | V.93-1(c) | | (c)1993 CFLR |
|---|---|---|---|---|---|---|---|---|
| # of kids | 1 | 1 | Input: | MONTHLY | 00:00:36 | | GDLN | PROP |
| % time w/NCP | 0% | 0% | Tactic: | 8(a) | COMBINED | | |
| Fil status | HH/MLA | HH/MLA | Year: | 1993 | Comb net spendable | | 5643 | 5643 |
| # fed exempt | 2* | 2* | Percent change | 0% | 0% | | |
| Wages+salary | 0 | 0 | Settings changd | | HUSBAND | | |
| Self-emp inc | 0 | 0 | | | Paymt cost/benefit | | 367 | 367 |
| Other taxabl | 0 | 0 | CC 4721 CS | /U | Net spendable inc | | 2577 | 2577 |
| AFDC+CS recd | 0 | 0 | Sacto SS | /A | Change from GDLN | | 0 | 0 |
| Oth nontaxbl | 2200 | 3423 | Nets: Adjusted | | % of combined net | | 46% | 46% |
| New sps inc | 0 | 0 | Husb | 2210 | % increase ovr GDLN | | 0% | 0% |
| IRA+Keogh | 0 | 0 | Wife | 3433 | Total taxes | | 10% | 10% |
| SS pd prev m | 0 | 0 | Comb | 5643 | Dep exemption value | | 0% | 0% |
| CS pd prev m | 0 | 0 | | | # withhold allows | | 4 | 3 |
| Health insur | 0 | 0 | ChCare | 0 | Net way paycheck | | 0 | 0 |
| Oth med exp | 0 | 0 | GDL CS | 367 | WIFE pays GDLNCS PROPCS | | |
| Prop tax exp | 0 | 0 | GDL CS | 0 | Paymt cost/benefit | | -367 | -367 |
| Interest exp | 0 | 0 | Total | 367 | Net spendable inc | | 3066 | 3066 |
| Contrib exp | 0 | 0 | | | Change from GDLN | | 0 | 0 |
| Misc itemizd | 0 | 0 | PROP: | | % of combined net | | 54% | 54% |
| Union dues | 0 | 0 | NonDed | 367 | % increase ovr GDLN | | 0% | 0% |
| Mand retrmnt | 0 | 0 | Deduct | 0 | Total Taxes | | -10 | -10 |
| Hardship ded | 0* | 0* | Total | 367 | Dep exemption value | | 0 | 0 |
| Oth GDL deds | 0 | 0 | Saving | 0 | # withhold allows | | 4 | 5 |
| ChC expenses | 0 | 0 | Release | 1 | Net wage paycheck | | 0 | 0 |

Date: 01/01/80 Time: 00:16:00 Tax Year: 1993 Tactic: 8(a)