Filed 10/4/16  V.T. v. M.T. CA4/1
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| V.T.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>M.T.,<br><br>    Defendant and Respondent. | D068596<br><br><br>(Super. Ct. No. D472096) |

APPEAL from an order of the Superior Court of San Diego County, Harry L.

Powazek, Judge.  Affirmed.

Law Offices of David C. Beavans, David C. Beavans, Caitlin V. Steele and

John T. Sylvester for Plaintiff and Appellant.

Horvitz & Levy, Jon B. Eisenberg and Curt Cutting for Defendant and

Respondent.

Plaintiff and appellant V.T. (Mother) appeals an adverse ruling in a paternity

dispute with defendant and respondent M.T. (Respondent).  (Fam. Code, § 7600 et seq.

[Uniform Parentage Act].)  Since the 1988 birth of Mother's now adult son, A.T. (not a party to this proceeding), Respondent has resisted any claim that he is A.T.'s father.

The current chapter of this dispute took place during March through August 2015, when Mother filed a motion to set aside a 2012 judgment of dismissal that was entered after Respondent's 2008 summary judgment motion was granted, based on his evidentiary showing about an existing 1990 set of blood tests.  In denying Mother's motion to set aside the judgment, the family court rejected her claims that the underlying summary judgment orders did not adequately comply with our appellate directions in the first of two prior opinions that we have issued in this dispute.  (*V.T. v. M.T.* (Dec. 22, 2003, D041061) [nonpub. opn.], referred to here as our 2003 prior opinion.)[1]  The findings and order after hearing document (FOAH) was filed August 14, 2015, stating both procedural and substantive grounds for denying the motion.[2]

Mother appeals, contending the family court erred in denying her motion because the underlying summary judgment ruling and dismissal order should be considered to be void.  She claims our 2003 prior opinion contains an express or implied requirement that the supplemental paternity testing that was allowed to take place had to be completed, through family court action to enforce its own orders, to qualify as the further

---

[1]    In 2013, A.T. filed his own paternity petition and request for DNA testing.  (*A.T. v. M.T.* (March 23, 2015, D065559) [nonpub. opn.], designated "our 2015 prior opinion.")  In our 2015 prior opinion, we held that his action was barred by the doctrine of res judicata and its corollary, collateral estoppel, because the previous judgment in this case had determined the merits of the paternity issue he was attempting to again raise.

[2]    Pursuant to Mother's unopposed augmentation request, the August 14, 2015 FOAH denying her motion has been added to our record.

2

"appropriate proceedings" that we required. She contends that when the family court, instead, stayed its 2004 DNA testing order and allowed the summary judgment motion to be brought, it failed to comply with the discussion and dispositional language in our 2003 prior opinion, and therefore exceeded its jurisdiction in granting the motion. (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [improper for trial court to proceed to trial in violation of terms of appellate opinion]; *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982 (*Butler*) [trial court is not authorized to materially depart from appellate directions on remand].)

In support of her arguments, Mother relies on Code of Civil Procedure section 473, subdivision (d),[3] and on the inherent power of the courts to issue equitable relief from judgment. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240 [a " 'void judgment is, in legal effect, no judgment' "].) Alternatively, Mother makes procedural objections that the family court incorrectly resolved her motion for relief without affording her a duly noticed, evidentiary hearing, and without allowing a timely formal substitution of her newly retained counsel that would have enabled him to inspect various sealed court files, before the 2015 hearing and ruling dates.

We interpret and apply to this record the text and dispositional language of our prior 2003 opinion. (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859,

---

3     Under Code of Civil Procedure section 473, subdivision (d): "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." All further statutory references are to this code unless noted.

3

863 (*Ayyad*) [de novo review is proper to define jurisdiction conferred on trial court on remand, in light of applicable law and language of the operative opinion].)  As we shall show, although our 2003 prior opinion ordered that further proceedings to accomplish DNA testing should take place, and the family court properly issued such an implementing order in 2004, no jurisdictional or legal defect occurred when the family court in 2006 allowed Respondent to, if desired, file a summary judgment motion to address the legal significance of the existing 1990 blood tests.  Further, the family court did not err or abuse its discretion in staying the pending DNA testing order, while those legal issues were being litigated.  After Mother's appeal of the 2006 stay and other orders was dismissed, Respondent's unopposed summary judgment motion was recalendared and after a hearing in 2008, granted.  (§ 437c.)

The public policies that promote finality of judgments and avoidance of unending litigation generally require parties to court actions to assume responsibility for the complete litigation of their causes during the proceedings.  (*Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613, 626.)  We conclude that the family court acted within its jurisdiction in entertaining and resolving the summary judgment motion as an "appropriate" further proceeding in the case, consistent with the views expressed and the directions given in our 2003 prior opinion.  Mother has not shown that those underlying orders violated our appellate directions or are otherwise void.  Moreover, the family court complied with due process standards in the hearing procedures used for the motion to set aside the judgment.  We affirm the 2015 ruling denying Mother's motion.

4

# I

## PROCEDURAL HISTORY

### A.  First Appeal and 2003 Prior Opinion

Shortly after A.T. was born in Illinois on May 25, 1988, Mother filed a paternity action against Respondent there.  The Illinois court ordered in 1990 that A.T., Mother and Respondent submit to blood tests (the 1990 blood tests).  The laboratory that conducted them concluded it was not possible that Respondent was A.T.'s biological father.  In March 1992, Mother stipulated to dismissal of the Illinois paternity action, without prejudice.

Next, a state's attorney in Illinois filed a complaint in May 1992, alleging that Respondent was A.T.'s father.  The state shortly thereafter voluntarily dismissed the complaint.  A third Illinois paternity complaint, alleging Respondent was A.T.'s father and also the father of A.T.'s younger brother, was dismissed in 1993.

In 1998, the San Diego County District Attorney filed a child support action against Respondent, alleging he was A.T.'s and his brother's father.  Shortly after filing the action, the district attorney dismissed it without prejudice.

In 2002, Mother filed the underlying paternity petition in this case in San Diego, again alleging Respondent was A.T.'s biological father.  (Fam. Code, § 7550 et seq., Uniform Act on Blood Tests to Determine Paternity.)  The family court initially dismissed the petition on the ground that it was barred by the doctrine of res judicata. Mother appealed and we reversed, remanding for further proceedings.  In our 2003 prior opinion, we determined that further proceedings to establish paternity were allowable,

5

due to the lack of a binding final decree in Illinois or California.  We held that Respondent had not carried his burden of pleading and proving that a prior binding final judgment on the merits was a complete defense to this petition.  We reversed the order of dismissal on res judicata grounds, "with directions to conduct further proceedings [on] paternity testing."  Significantly, we noted that although no bar then existed to Mother's request for an order of genetic testing, "We can express no opinion on the outcome of those tests, as we are presented here with a purely procedural issue."  We noted that current law would apply to the subsequent "appropriate actions" (e.g., Fam. Code, § 7551 [standards for testing]).

Our 2003 dispositional language states in relevant part, "The order of dismissal is reversed in part with directions to conduct further proceedings to order paternity testing consistent with the views expressed above."  The allowable further proceedings on the paternity issue thus included Mother's filing of a motion seeking DNA testing that would be supplemental to the 1990 blood tests.

B.  2004-2006 Proceedings on Remand

Following the partial reversal and as directed on remand, the family court held numerous hearings between 2004 and 2006 on Mother's motion for DNA testing and her related efforts to achieve service on Respondent.  Sealed reporter's transcripts have been provided for the hearings of April 12, 2004, May 30, 2006, and June 28, 2006.

After the hearing on April 12, 2004, the court issued a signature stamped FOAH that date, apparently prepared with the assistance of the family law facilitator.  The FOAH states that Respondent had failed to appear after being properly served, and that

6

the motion to conduct DNA testing was granted. All parties were to cooperate with the testing procedures, which should take place at a qualified testing facility in Ventura County, where Respondent resided. Mother was to bear the costs of testing.[4]

The next court hearing on DNA testing set for January 17, 2006 was continued to February and then April and May 2006, on Mother's request for an order to show cause on why the court should not assist her in achieving service on Respondent. After the court required the county child abduction unit to assist her in that regard, Respondent obtained an attorney and resumed participation in the action in May 2006. On June 28, 2006, A.T.'s request to be added as a real party in interest in the case was granted. Respondent requested immediate entry of judgment, based on the 1990 blood tests, but the court declined, allowing a noticed motion for summary judgment to be filed. The pending order for DNA testing was stayed until those summary judgment proceedings could be held.

---

4      On April 29, 2016, this court granted Respondent's (formerly) unopposed request to augment the record with the April 12, 2004 FOAH, ordering DNA testing. However, in connection with the filing of Mother's reply brief, she later sought judicial notice of that April 12, 2004 FOAH and related proceedings, and made new allegations that Respondent had personally concealed and misplaced the court file's copy of that order, with bad intent. We denied that judicial notice request, and likewise denied Respondent's motion seeking to have part II of the reply brief (pp. 13-19) stricken for its citations to such material, as not found in the appellate record. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [record references in appellate briefs must be supported by specific citations to the record]; all further rule references are to these rules.) In our discretion, we simply disregard noncompliant portions of the reply brief. (Rule 8.204(e)(2)(C) [court may disregard inappropriate material contained in brief]; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1258, fn. 12; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 343-344.)

Mother brought an appellate challenge to the June 28, 2006 stay and other orders, but on Respondent's unopposed motion, it was dismissed. (*V.T. v. M.T.* (D048985, dism. Feb. 14, 2007).)

### C. Summary Judgment Motion and FOAH

On September 22, 2006, Respondent filed his summary judgment motion seeking a declaration of nonpaternity. After some delay due to Mother's appeal of the June 28, 2006 orders, which was dismissed, the summary judgment motion was restored to the family court calendar.

After hearing, Respondent's unopposed summary judgment motion was granted in November 2008, based on evidence he presented about the 1990 blood tests. This summary judgment ruling was memorialized in a FOAH filed January 12, 2009. (§ 437c.)[5] At the November 4, 2008 hearing on the summary judgment motion, Superior Court Judge Joel R. Wohlfeil reviewed the file and explained how he had previously made efforts to send Mother, who was appearing in propria persona, to the family law facilitators' office for advice, which was inconclusive. No opposition to the motion was on file, and the court said to her, "[y]ou've not given me any opposition, much less an evidentiary basis, to deny the motion." Mother then explained that her father had been

---

[5]     We refer to the subject summary judgment order as the January 12, 2009 summary judgment FOAH. Paragraph 2 of the order specifies, "Respondent shall have judgment that there exists no Parent-Child relationship between Respondent and Claimant [A.T.]." The family court in the 2015 FOAH on review characterizes the January 12, 2009 FOAH as a "Judgment of Non-Paternity," but no such titled document is in the record. At a statutory dismissal hearing that was apparently court initiated, this case was dismissed by the family court in July 2012, for failure to prosecute. (§ 583.410 et. seq.) We will discuss, as necessary, the finality aspect of this January 12, 2009 FOAH. (Pt. III.B, *post.*)

ill, but the court decided that she had not shown good cause for failing to file any opposition, and it granted the unopposed motion. The November 4, 2008 minute order states that Respondent's summary judgment motion was granted, and Mother's paternity test motion was denied because it had been established that Respondent was not A.T.'s father. A.T.'s request that he be removed as a claimant in the action was granted.

The January 12, 2009 summary judgment FOAH formalizes the ruling of November 4, 2008. It states, "There is no triable issue of fact regarding whether Respondent is the father of Claimant [A.T.] because the uncontroverted evidence of [two doctors] establishes that, after drawing blood from Petitioner, Respondent, and Claimant [A.T.] in conformity with the then existing requirements of Uniform Act on Blood Tests to Determine Paternity [former Evidence Code sections 890-897], HLA and DNA paternity tests were conducted by CellMark and HLA Labs, both of which concluded that Respondent is not the father of [A.T.]."

Thus, paragraph 2 of the January 12, 2009 summary judgment FOAH specifies that "Respondent shall have judgment that there exists no Parent-Child relationship between Respondent and Claimant [A.T.]." Additionally, the order provides that despite A.T.'s withdrawal from participation in the action, the court's determination of the nonexistence of a parent-child relationship between Respondent and A.T. was binding upon A.T.

Mother briefly pursued an appeal of the November 4, 2008 minute order (as formalized in the Jan. 12, 2009 summary judgment FOAH). However, her appeal was dismissed for lack of appellate record preparation, and the remittitur issued March 23,

9

2009. (*V.T. v. M.T.* (D054234, dism. Jan. 21, 2009).)

D.  A.T.'s Appeal and Prior 2015 Opinion

Although the January 12, 2009 summary judgment FOAH included an order specifying that the court's "determination of the non-existence of a Parent-Child Relationship between Respondent and Claimant [A.T.] is binding on Claimant [A.T.]," he nevertheless filed a new paternity petition and request for DNA testing, in 2013.  It was dismissed.  In our 2015 prior opinion arising out of that related case, we affirmed the dismissal on the basis that "[A.T.]'s action is barred by the doctrine of res judicata and its corollary, collateral estoppel.  The judgment in D472096 determined the paternity issue [A.T.] now raises against him on the merits."  We further noted, "unless the judgment in D472096 is set aside, it is binding on [A.T.] and bars his current claim.  [Citation.] [A.T.] has not asserted any grounds for setting aside the judgment in D472096."

E.  Mother's Motion to Set Aside Orders Under Section 473, Subdivision (d); Ruling

The day after our 2015 prior opinion was filed, Mother, acting through her newly retained attorney, brought an ex parte application to file a postjudgment/postdismissal request for an order to set aside the January 12, 2009 summary judgment FOAH and the 2012 dismissal, and she also sought leave to file a substitution of attorney.  (Rule 5.151 [applications for emergency orders in family law cases].)  Mother represented that the family court clerk would not accept any filings in a dismissed case without leave of court, and accordingly she sought permission to set for hearing the lodged motion to set aside the judgment.  On the merits, her points and authorities contended that the November 4, 2008 ruling and the January 12, 2009 summary judgment FOAH were void, for purported

10

failure of the superior court to follow the directions in this court's 2003 prior opinion.

The family court (Judge Powazek) set a hearing date and received opposition, which included Respondent's request to quash the application. Mother's acting attorney filed supplemental papers, as did Respondent's attorney.

At the scheduled hearing on May 14, 2015, the family court heard argument from counsel for each side, on whether another hearing should be set for the set-aside motion, and on the merits. In its tentative oral ruling, the court stated, "I don't feel [the superior court's] order resulting from the summary judgment is void" and "I don't think [the superior court] exceeded [its] jurisdiction or what the appellate court intended in its 2003 [remittitur]." Thus, the court found it lacked jurisdiction to adjudicate the set-aside motion. In a letter of May 18, 2015, the judge advised the parties that the tentative rulings were confirmed and Respondent should prepare a FOAH.

In the challenged August 14, 2015 FOAH, the court denied the set-aside motion on its merits, along with permission to set it for an evidentiary hearing. The court characterized the issue before it as whether, pursuant to section 473, subdivision (d) or the superior court's inherent power, the November 4, 2008 order (amounting to a "Judgment of Non-Paternity"), could be set aside as void. The court concluded that it "does not have the jurisdiction to grant, deny, or even consider a motion to set aside Judge Wohlfeil's November 4, 2008 Judgment of Non-Paternity. [¶] The Court does not have the jurisdiction to determine whether Judge Wohlfeil's November 4, 2008 Judgment of Non-Paternity is void based on any allegations or based simply on the allegations that Judge Wohlfeil failed to order genetic testing prior to ruling on Respondent's Motion for

11

Summary Judgment. Judge Wohlfeil did not exceed his jurisdiction or what the appellate court intended in its 2003 Remittitur. [¶] [Mother] did not meet her burden of proof to establish that Judge Wohlfeil's November 4, 2008 Judgment of Non-Paternity is void."

The court further stated, "[Mother]'s only relief from Judge Wohlfeil's November 4, 2008, Judgment of Non-Paternity was to timely file a writ or file a direct appeal. [¶] [Mother] filed a direct appeal of Judge Wohlfeil's Order, but the appeal was dismissed, and Remittitur issued on March 23, 2009, for [Mother]'s failure to timely designate the record on appeal." Accordingly, on the merits, Mother's motion to set aside the January 12, 2009 summary judgment FOAH was denied with prejudice. The order then granted a request by Mother's counsel to file a substitution of attorney that would allow him to view the confidential superior court file.

Mother filed a notice of appeal on July 8, 2015, specifying the date of the challenged order's entry as May 18, 2015, which was actually the date of the court's letter to the parties confirming its tentative ruling and requesting preparation of the FOAH.[6]

---

[6] Although Respondent claims in his brief that Mother's appeal is not properly cognizable or is premature, we reject such contentions. As Respondent admits, since the superior court denied the set-aside motion on its merits, the ruling is an appealable one. (§ 904.1, subd. (a)(2) [order appealable as one after judgment]; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1394 [order denying motion to vacate judgment under section 473 is appealable].) In any event, in our discretion and under rule 8.104(d)(2), we may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, "as filed immediately after entry of judgment." The better approach in this case is to reach the merits of the issues presented.

12

## II

### *APPLICABLE STANDARDS*

#### A.  Legal Context of Motion to Set Aside Judgment

Mother goes beyond arguing that the summary judgment was erroneously granted, instead claiming the family court lacked jurisdiction to hear it.  (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950-951 [errors in excess of jurisdiction are to be distinguished from errors of substantive law that are within the court's jurisdiction].)  In Mother's view, the invalidity and voidness of the January 12, 2009 summary judgment FOAH are apparent on the face of the record, when the dispositional language in our prior opinion is properly interpreted.[7]

Where there has been a long delay in seeking relief from judgment under the provisions of section 473, such as on the basis of extrinsic mistake, a strong public policy in favor of the finality of judgments arises, allowing such relief only in exceptional circumstances.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982 (*Rappleyea*).) " 'To set aside a judgment based upon extrinsic mistake one must satisfy three elements.  First, the defaulted party must demonstrate that it has a meritorious case.  Second[ ], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action.  Last[ ], the moving party must demonstrate

---

[7]     As discussed in part III.B, *post*, apparently no summary judgment or dismissal judgment was entered until the 2012 dismissal order for lack of prosecution.  (§ 583.410.) Mother does not focus specifically on the 2012 dismissal order, although she seems to argue it is likewise void.  Our discussion of the effectiveness of the January 12, 2009 summary judgment FOAH includes the subsequent dismissal order.

diligence in seeking to set aside the default once . . . discovered.' " (*Id*. at p. 982, italics omitted; *Armstrong v. Armstrong, supra,* 15 Cal.3d 942, 951-952 [where the court had the power to act such that its resulting orders were not void, strong interests promoting the finality of judgments become applicable].)

Mother places some emphasis upon the circumstances that during this lengthy litigation, she has at times been unable to afford to retain counsel and therefore has appeared in propria persona. In evaluating that argument, we are mindful of the guidance in *Rappleyea*, *supra*, 8 Cal.4th 975, 984-985, that "mere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. [Citation.] . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation."

B. Interpretation of Dispositional Language

As an appellate disposition, this court may "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (§ 43.) "A disposition is not intended to be a riddle, and the directions in the dispositional language, as conveyed by the remittitur, are to be followed by the trial court on remand." (*Ducoing Management Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313 (*Ducoing*).)

14

"The appellate court need not expressly comment on every matter intended to be covered by the disposition. The disposition is construed according to the wording of its directions, as read with the appellate opinion as a whole." (*Ducoing*, *supra*, 234 Cal.App.4th at p. 313, citing *Eldridge v. Burns* (1982) 136 Cal.App.3d 907, 917-918; *Ayyad, supra*, 210 Cal.App.4th at p. 859.) "It is unnecessary and inappropriate for an appellate court to attempt to envision and to set forth in detail the entire universe of matters prohibited by its directions on remand." (*Id.* at p. 863.) However, where an appellate disposition and remittitur is ambiguous, the trial court must construe it in light of applicable law and the body of the opinion in which it is found. (*Ibid.*, fn. 7.)

"When an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and must be followed. Any material variance from the directions is unauthorized and void." (*Butler*, *supra*, 104 Cal.App.4th 979, 982, italics omitted; *Hampton v. Superior Court*, *supra*, 38 Cal.2d 652, 655-656.) It is well established that on remand, the lower court may not reopen the facts or retry the case. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701-702 [trial court may not reopen case after appellate court's unqualified affirmance].)

It is elementary that "[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118.) A trial court is accorded some flexibility to implement the appellate directions, such as receiving new evidence to

15

clarify the resubmitted issues, as long as the trial court does not materially depart from the directions on remand. (*Butler*, *supra*, 104 Cal.App.4th at p. 982.)

III

*ANALYSIS: PRIOR 2003 OPINION'S DISPOSITIONAL LANGUAGE*

Construing the dispositional language " 'in conjunction with the opinion as a whole,' " (*Ducoing*, *supra*, 234 Cal.App.4th at p. 313), we turn to the record to evaluate the August 14, 2015 FOAH denying Mother's motion to set aside the judgment. (*Ayyad, supra*, 210 Cal.App.4th at p. 859.)

A. 2006 Calendaring of Summary Judgment Motion; Stay Order

In our 2003 prior opinion, we reversed an order of dismissal on res judicata grounds, "with directions to conduct further proceedings [on] paternity testing," consistent with the views expressed in the text. We expressed no opinion on the outcome of those tests, "as we are presented here with a purely procedural issue." We anticipated that current law would apply to the subsequent "appropriate actions" (e.g., Fam. Code, § 7551 [standards for testing]), such as Mother's motion seeking DNA testing that would be supplemental to the 1990 blood tests.

In compliance with these directions, the April 12, 2004 FOAH was issued, after the family court reminded Mother that she had not exactly been following through, over the years, to prosecute her case. The court instructed Mother to obtain preparation of the order, using the assistance of the family law facilitators. Problems developed with achieving service on Respondent, leading to the involvement of the child abduction unit.

16

By May 2006, service was evidently accomplished, since Respondent's attorney was again appearing for him in the matter.

At the June 28, 2006 hearing, A.T. began to appear as a real party in interest who was also requesting DNA testing. Matters came to a head when Respondent's attorney requested a judgment of nonpaternity based on the 1990 blood tests, which were argued to be valid at the time they were taken and never found to be inadequate as a matter of law. The court refused, but inquired whether summary judgment proceedings were appropriate to seek dismissal, and Respondent's counsel requested permission to file one, with shortened notice provisions. The court declined to shorten time but determined that it was appropriate to stay the DNA test until the hearing on the summary judgment motion, further noting that the case had already been in his courtroom for a year and a half.

Mother contends that imposing the stay order on DNA testing, while permitting the summary judgment motion to be filed and prosecuted, was a material departure from the directions on remand. (*Butler*, *supra*, 104 Cal.App.4th 979, 982.) We cannot agree. No finding was made in our 2003 prior opinion on the probative value of the 1990 blood tests, as we expressly noted that we were deciding only procedural matters. It was not unreasonable for the family court to acknowledge in 2006 that legal issues regarding dismissal of the case remained for resolution, based on the existence of the 1990 blood tests. Mother challenged their reliability, and the family court denied Respondent's request to immediately enter a dismissal based on those tests, and required that formal noticed motion proceedings be held.

Appellate courts cannot be expected to attempt to envision and to set forth in detail the entire universe of matters prohibited (or allowed) by the directions on remand. (*Ayyad*, *supra*, 210 Cal.App.4th 851, 863.) Uncertainties always arise during the litigation process, including the degree of diligence exercised by the respective parties in prosecuting or resisting prosecution of the case. The family court had been making efforts since April 2004 to move the case forward, without success. Although Mother was pursuing the case in propria persona at times, she was still held to the standards applicable to other litigants. (*Rappleyea*, *supra*, 8 Cal.4th 975, 984-985; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795 ["[i]n propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know [procedural] rules."].) The family court's analytical approach did not misinterpret the requirement in our 2003 prior opinion that "appropriate proceedings," directed toward resolving the case on the merits, should be pursued. The court had some flexibility to allow for procedural developments as the case progressed, not inconsistent with the thrust of our prior opinion. (*Butler*, *supra*, 104 Cal.App.4th 979, 982.) Under these circumstances, it was not error to allow the summary judgment motion proceedings to be initiated and to impose the related stay order.

B. Effectiveness of January 12, 2009 FOAH and 2012 Dismissal Order: Not Void

Pursuant to Family Code section 7636, "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to [Penal Code section 270, for parental failure to provide]." The January 12, 2009 FOAH was not prepared in

the form of a judgment, although the family court in 2015 construed it as representing a "Judgment of Non-Paternity," and the parties refer to it as such.

In any case, it is proper to construe a summary judgment order as a judgment if it has the requisite finality, if that is necessary to resolve the issues presented. (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288 [order granting summary judgment is not appealable order, since appeal is from the judgment; appellate court may construe such a notice of appeal as proper].) The underlying paternity issue was resolved on the merits in the summary judgment order, and our current inquiry is whether Mother's motion to set aside these underlying orders, including the dismissal, was properly denied.

The summary judgment statute anticipates that the superior court has discretionary authority to grant an unopposed motion for summary judgment. (§ 437c, subd. (b)(3) [failure to comply with requirement that opposition papers include a separate statement responding to motion's separate statement of undisputed material facts "may constitute a sufficient ground, in the court's discretion, for granting the motion"].) Mother responds that the law "respects form less than substance" (Civ. Code, § 3528), and there are statutory policies favoring the establishment of parentage facts. (E.g., Fam. Code, § 7570, subd. (b) [voluntary declarations of paternity].) She contends that the family court should have done more to enforce its own orders for DNA testing.

Although the family court duly ordered that DNA testing be conducted, the reality of the situation was that a laboratory, not a court, must actually conduct such testing, and as the petitioner, Mother had the burden to seek enforcement of the order. Regrettably,

19

she was unable to do so. We inquire whether the family court, from 2003 through 2008, exceeded its jurisdiction in adapting its orders and hearing schedule to the situation as it developed, to permit the summary judgment proceedings to go forward. By the time of the 2008 hearing, the motion had been pending for about two years. Mother, as a self-represented litigant, had been unable to show good cause for her inability to respond to the motion.

When our 2003 prior opinion determined, through a procedural analysis, that there was no existing res judicata bar to the obtaining of further genetic testing, we directed that Mother be granted an opportunity to pursue it. As a litigant, she was required to comply with court procedures in doing so. Public policy disfavors unending litigation and requires litigants to assume responsibility for the complete litigation of their causes during the proceedings. (*Bank of America v. Superior Court*, *supra*, 220 Cal.App.3d 613, 626.) We find no requirement in our 2003 prior opinion that the supplemental DNA paternity testing that was ordered had to be completed, by way of sua sponte court action to ensure enforcement of its orders, for the anticipated "appropriate" further proceedings to take place. It was not a material variance from our appellate directions for the family court to resolve the case on a legal basis, through summary judgment and dismissal. (*Butler*, *supra*, 104 Cal.App.4th 979, 982 [some flexibility afforded to implement appellate directions to resolve resubmitted issues]; *Ginns v. Savage*, *supra*, 61 Cal.2d 520, 524, fn. 2 [prior opinion should be construed in light of the facts and issues then before the court].)

C.  Conduct of Summary Judgment Proceedings; Diligence Factor

Mother makes generalized arguments that the equities of the situation justify relief.  To the extent that she seems to argue the judgment was voidable, not void, because the trial court should have given her more time to prevent Respondent's summary judgment motion from being resolved on an unopposed basis, an inquiry into her degree of diligence is appropriate.  (See *Rappleyea*, *supra*, 8 Cal.4th 975, 983-984 [moving party must show diligent efforts to set aside default status].)  After 2003, she had an available remedy in mandamus to seek an order requiring the family trial court to implement the 2003 prior opinion appellate disposition, as she interpreted it.  (*Hampton v. Superior Court*, *supra*, 38 Cal.2d 652, 656 [writ will lie to compel trial court to implement properly the appellate directions for governance of further proceedings].)  Although she filed several appeals, but did not pursue them, no such writ proceedings were brought.

The record as a whole does not show that the family court proceedings from 2004 through 2009 deprived Mother of a realistic opportunity to pursue DNA testing, as ordered.  Despite the financial and other difficulties she disclosed to the court, the court was required to maintain a neutral stance without exceptional treatment of her as a self-represented litigant.  (*Rappleyea, supra,* 8 Cal.4th 975, 984-985.)  In light of the entire history of the case, the important statutory policies favoring establishment of parentage facts had to yield to the natural consequences of Mother's litigation choices to pursue her claims only in an ad hoc, sporadic fashion.  Regardless of her financial and other constraints, she had the duty as a litigant to safeguard the viability of her case, but she failed to do so over a long period of time.  She has not shown a basis for relief from

21

judgment in excusable delay or another justification for the reopening of this already adjudicated, dismissed case. (*Id.* at pp. 981-982.)

## D. Conduct of Subject Motion Hearing

Mother next objects that in 2015, the family court eventually resolved her ex parte motion for relief from judgment without affording her a formal noticed, evidentiary hearing. Although she was already being represented by newly retained counsel in bringing and arguing the motion, her attorney was not allowed to file a substitution form until the close of the hearing.

To the extent Mother is challenging the fairness of the hearing procedures, she has not shown any due process deprivation or reversible error. Even though "[t]he inclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment," the foundational question is whether the dismissal was in some respect void or voidable. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495-496.) " 'To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider.' " (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 901, fn. 8; italics omitted.)

Moreover, an appellant may be deemed to have waived the right to assert error on appeal by not properly raising an issue at the trial level, such as a purported error in setting or not setting a matter for hearing. (*In re Kevin S.* (1996) 41 Cal.App.4th 882, 885-886.) Mother cannot show it would have made any difference if her new attorney had been able to inspect sealed court files before the 2015 ruling was made. She was

represented at the hearings and the procedural and substantive issues were largely addressed by her counsel, who did not decline to participate in that manner. The relevant legal issues were fully aired and no prejudicial procedural error occurred. The January 12, 2009 summary judgment FOAH and the 2012 dismissal for lack of prosecution remain in effect.

## DISPOSITION

The order is affirmed. Each party shall bear his or her own costs of appeal.

_____

HUFFMAN, Acting P. J.

WE CONCUR:

_____

NARES, J.

_____

O'ROURKE, J.

23