Filed 10/10/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re E.R. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B288376 (Super. Ct. Nos. J071566, J071567) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  A.C. et al.,  Defendants and Appellants. | |

The courts, not the parties, decide jurisdiction.

A.C. (Mother) and E.R. (Father) appeal orders of the juvenile court terminating their parental rights to their children E.R. and D.R., minors coming under the juvenile court law. (Welf. & Inst. Code, §§ 300, subds. (b)(1) & (g), 366.26.)[1] We conclude, among other things, that the juvenile court had jurisdiction under the Uniform Child Custody Jurisdiction

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

Enforcement Act (UCCJEA) (Fam. Code, § 3421) after a Nevada juvenile court declined to exercise jurisdiction. We conditionally reverse and remand because the investigation required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) was not complete.

## FACTS

### *The Nevada Juvenile Court Proceedings*

In April 2017, the Clark County, Nevada Department of Family Services (DFS) filed a juvenile dependency petition in the Clark County, Nevada juvenile court ("Nevada court"). Mother had recently given birth to twins, E.R. and D.R., in Nevada. The babies tested positive for "amphetamines," because Mother used methamphetamines during her pregnancy.

The DFS petition stated that Mother lives in California and came to Nevada "to sign her kids over to her cousin." Mother's parental rights to two other children were recently terminated by the Ventura County Superior Court ("juvenile court" or "California court"). Mother's and Father's "drug use and out of control behavior put[] [the twins] at risk of not having their needs met." Mother and Father have "extensive criminal" histories and both have "perpetrated domestic violence."

The Nevada court sustained the DFS juvenile dependency petition on May 24, 2017. The following month, the parents appeared in the Nevada court and were advised about their visitation rights. The twins were placed in a foster home in Nevada.

During the next two months, the Nevada court judge and the California court judge, Judge Cody, had telephone conversations concerning which court should exercise jurisdiction. The Nevada court judge expressed concern whether Nevada should maintain jurisdiction, noting: 1) the "parents may

2

have just came to Las Vegas to give birth to the children" and then return to California, and 2) both parents have pending California criminal cases.

In July, the Nevada court declined to exercise further jurisdiction, ruling: "California is to take jurisdiction of the case"; "California does not have a problem taking jurisdiction and the parents have all of their family in California." Judge Cody informed the Nevada court in a telephone call that the Ventura County Human Services Agency (HSA) was "willing to file a Petition" in California. The Nevada court ordered the "DFS to transfer the files to California."

*The California Court Proceedings*

On July 31, 2017, HSA filed juvenile dependency petitions (§ 300, subds. (b)(1), (g) & (j)) in the California court, alleging, among other things, that Mother and Father were unable to care for and protect the infants. HSA repeated the allegations of the Nevada DFS petitions relating to substance abuse, criminal conduct, abuse and neglect. In its detention report, HSA reported, "The children are currently placed in a confidential foster home in Nevada."

At the August 1, 2017, hearing, the parents appeared with counsel. Judge Cody said, "So we're here at a detention hearing on a case that I became familiar with when I received a telephone call from a Nevada court several weeks ago . . . . [T]he decision was made . . . with the agreement of both courts that California should exercise general jurisdiction."

Mother's counsel said, "Nevada would have been the appropriate forum. The children remain in Nevada. But I think the Nevada court has made a decision that's not a decision of this Court and so their remedy would lie in Nevada I would assume."

3

The juvenile court found section 300 governs, and HSA "has the responsibility for the temporary care and placement of the children."

In the jurisdiction/disposition report, HSA recommended that family reunification services for Mother be bypassed because: 1) in a prior dependency court proceeding, Mother's parental rights to the twins' older siblings were terminated; and 2) Mother had a significant substance abuse history. (§ 361.5, subd. (b)(11), (13).) The juvenile court found the allegations of the juvenile dependency petitions true and ruled, "Services to the mother are bypassed . . . ." HSA subsequently recommended that Father not receive reunification services. After an evidentiary hearing where Father testified, the court found that it was not in the best interests of the children to offer Father services.

In a section "366.26 WIC Report," HSA recommended that the parental rights of Mother and Father be terminated and a permanent plan for adoption be established for the children. It said, "[M]other and father had an open dependency case with . . . older siblings in the County of Ventura and had fled to Las Vegas, Nevada for fear that the newborn babies would be removed from their care." It noted that the juvenile court previously found Mother has "substance abuse issues, criminal conduct, unaddressed mental health issues and reoccurring domestic disputes with significant others." Father "was found to have substance abuse issues, criminal conduct, reoccurring domestic disputes . . . and [he] should have known about the mother's substance abuse while pregnant with the children." He "failed to provide support and care or assume a parental role, placing the children at risk of abuse or neglect." On February 21, 2018, the court held a section 366.26 hearing, terminating

4

Mother's and Father's parental rights and finding the children are adoptable.

*ICWA*

On a parental notification of Indian status form, Father reported the children may be eligible for membership in a federally recognized Indian tribe. The paternal great-grandmother "would know more." He provided her name and phone number.

HSA's initial ICWA report stated that Mother and Father "reported having Native American ancestry." Mother claimed Apache ancestry. In a subsequent report, HSA said it sent notice to the eight federally recognized Apache tribes and received responses that the children were not members or entitled to enroll. These two HSA reports, however, contained nothing about contacting the paternal great-grandmother that Father had mentioned. The juvenile court found ICWA did not apply.

DISCUSSION

*Jurisdiction*

The parents contend the California court lacked subject matter jurisdiction over the children. They claim only the Nevada court has jurisdiction.

"The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings in California." (*In re A.C.* (2017) 13 Cal.App.5th 661, 668.) A dependency proceeding is a child custody proceeding within the meaning of this act. (*Ibid.*) Family Code section 3421, "sets forth four alternative bases for subject matter jurisdiction . . . . (*Ibid.*)[2]

Section 3421, subdivision (a) provides, in relevant part:

_____

[2] All further statutory references are to the Family Code.

5

"[A] court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

"(1) This state is the *home state* of the child on the date of the commencement of the proceeding . . . .

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum . . . and both of the following are true:

"(A) The child and the child's parents, or *the child and at least one parent or a person acting as a parent*, *have a significant connection with this state* other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) *have declined to exercise jurisdiction* on the ground that a court of this state is the more appropriate forum to determine the custody of the child . . . .

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3)." (Italics added; *In re A.C.*, *supra,* 13 Cal.App.5th at pps. 668-669.)

The parents contend the California court erred by exercising jurisdiction over the children because Nevada was the children's "home state" and the Nevada court had jurisdiction.

HSA agrees that Nevada was initially the home state for the children. It notes the children "lived from birth with persons 'acting as a parent' - i.e., their Nevada foster parents," and it consequently concedes that "Nevada was likely the twins' 'home state.'"

6

But HSA notes the California court obtained jurisdiction on July 19, 2017, the date the Nevada court declined to exercise jurisdiction. The Nevada court judge ruled: 1) "California does not have a problem taking jurisdiction"; 2) "the parents have all of their family in California"; 3) "Judge Cody stated their agency [HSA] is willing to file a Petition there in California"; 4) "California is to take jurisdiction of the case"; and 5) the Nevada DFS agency must "transfer the files to California."

Here the Nevada court determined that the California court was "the more appropriate forum to determine the custody of [the children]." (§ 3421, subd. (a)(3).) Where the out-of-state court declines "to exercise jurisdiction over the children's cases on the ground California was the more appropriate forum," the California court has "*subject matter jurisdiction* over their cases under section 3421, subdivision (a)(3), regardless of whether it also had jurisdiction under section 3421, subdivision (a)(2)." (*In re A.C.*, *supra*, 13 Cal.App.5th at p. 678, italics added.)

The parents argue it was improper for the Nevada court to communicate with the California court before declining jurisdiction. But states have adopted uniform child custody acts "to promote cooperation between state courts in custody matters." (*State ex rel. Aycock v. Mowrey* (Ohio 1989) 544 N.E.2d 657, 660.) A court of one state may communicate with a court of another state before deciding to decline jurisdiction. (§ 3410, subd. (a); *Johnson v. Ellis* (Miss. 1993) 621 So.2d 661, 664.) Doing so comports with common sense and ensures the judges are properly informed of the facts.

The parents contend the Nevada court order divesting jurisdiction was not accompanied by valid findings that "California was the more convenient" forum.

But decisions to decline jurisdiction are upheld without findings by the out-of-state court. (*In re A.C.*, *supra*, 13 Cal.App.5th at pp. 677-678.) "'[W]hen a home state *declines jurisdiction in any manner* that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, . . . such . . . refusal is tantamount to a declination of jurisdiction . . . .'" (*Id.* at p. 675, some italics added.) This is the case even where the foreign court makes no findings on the more convenient forum issue. In *In re A.C.*, a foreign court did not respond to e-mails regarding whether it would exercise jurisdiction. The court held that "the Mexico judicial authorities' *inaction* by failing to timely respond to the court's e-mails was tantamount to their declination to exercise jurisdiction over the children's cases on the ground California was the more appropriate forum." (*Ibid.*, italics added.)

Here the Nevada court *expressly* found it was declining jurisdiction in favor of the California court. That authorized the California court to take jurisdiction even though the children were born in Nevada. (§ 3421, subd. (a)(3); *In re A.C.*, *supra*, 13 Cal.App.5th at p. 678; *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1287; *In re Marriage of Richardson* (2009) 179 Cal.App.4th 1240, 1243.)

The parents contend the juvenile court abused its discretion by agreeing to take jurisdiction because Nevada was the better and more convenient forum. But *both* the Nevada and California courts reasonably concluded California was the proper forum. The California court found the parents' residence in California was "a factor on which state would have the most appropriate contacts and information." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 510 [parent's "continued residence in

California gives this state a legitimate connection to the custody dispute"].)

The Nevada court was concerned "the parents" would not "be able to come back to Nevada to participate in their case plan services or visit." In deciding the issue of an "inconvenient forum," courts may properly consider: 1) "[t]he distance between the court in this state and the court in the state that would assume jurisdiction" (§ 3427, subd. (b)(3)); and 2) "[t]he degree of financial hardship to the parties in litigating in one forum over the other" (*id.*, subd. (b)(4)). The Nevada court noted: 1) Father has "a criminal case in California," 2) Mother has "a criminal hearing in California today," and 3) Mother has "relatives in California." It noted its concern about "Nevada keeping the case when [the] parents may have just [come] to Las Vegas to give birth to the children" and then return home to California.

HSA also argued the Nevada court's "decision made sense" because: 1) California was better suited to hear the case; 2) the California court recently had a dependency case involving the children's half-siblings; 3) the California court was familiar with the family; 4) Mother told the Nevada social worker "she lived in Oxnard and came to Nevada only to give the [children] to her cousin"; and 5) the extended family lived in California.

A relevant factor is "[t]he familiarity of the court of each state with the facts and issues in the pending litigation." (§ 3427, subd. (b)(8).) The juvenile court had that familiarity. The parents have not shown why the factors HSA highlights do not support the court's decision.

The two courts could also properly consider why the parents went to Nevada. The findings of the Nevada court show the parents did not go there to establish residency. HSA said their motive was connected to the pending California court's

9

dependency case involving the twins' older siblings and the parents. In its report to the court, it said, "[M]other and . . . father had an open dependency case with . . . older siblings in the County of Ventura and *had fled to Las Vegas*, Nevada *for fear* that *the newborn babies would be removed from their care*." (Italics added.) Both courts recognized the roots of the Nevada case were in the earlier California dependency proceeding.

The parents claim the juvenile court prevented them from presenting "evidence on the question of which forum [Nevada or California] was more convenient." HSA responds the record does not support this claim. We agree.

At the August 1, 2017, hearing, the parents appeared with their counsel. The juvenile court informed the parties that the Nevada court decided California should exercise jurisdiction. Mother's counsel said, "[M]y client continues to believe that Nevada would have been the appropriate forum. The children remain in Nevada." He requested the court "to reserve" that issue. The court responded, "I guess we can revisit it." The court thereafter held 10 hearings on this case.

HSA contends that after the August 1st hearing the parents abandoned the inconvenient forum issue. We again agree. They had opportunities to raise the issue and present evidence in the 10 hearings after the August 1st hearing, but they did not do so at any of those hearings. Nor did the juvenile court prevent them from presenting evidence on this issue.

The parents argue the Nevada court's order declining jurisdiction is invalid.

HSA responds: 1) the parents participated in the Nevada proceedings, 2) they had the right to appeal the Nevada decision, 3) they did not appeal, and 4) they are consequently making an

10

untimely and improper collateral attack on a final Nevada judgment. We agree.

In the juvenile court, Mother's counsel said, "I think the Nevada court has made a decision that's not a decision of this Court and so [the parents'] *remedy would lie in Nevada* I would assume." (Italics added.) But the parents did not appeal the Nevada court judgment and it is now final.

Section 3453 provides, "A court of this state shall accord full faith and credit to an order issued by another state . . . ." "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, *qualifies for recognition throughout the land*." (*Baker v. General Motors Corp.* (1998) 522 U.S. 222, 233 [139 L.Ed.2d 580, 592], italics added.) Final judgments of other states are conclusive on issues properly resolved in those judgments. (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 951; *In re Mary G.* (2007) 151 Cal.App.4th 184, 201.)

*ICWA*

The parents claim HSA did not properly investigate the possible Indian heritage of the children. They contend the juvenile court erred by ruling ICWA did not apply.

Under ICWA, the "juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child." (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) The social services agency has a continuing duty to provide additional tribal notice if it discovers an ICWA notice error or omission. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 471-472; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1424 ["Notice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered"].)

11

In the "parental notification of Indian status" form, Father said the paternal great-grandmother would have information about the family's Indian heritage. The parents claim HSA did not interview her.

HSA agrees and concedes that 1) it "has not substantially complied with ICWA notice requirements," 2) the order "terminating parental rights should be vacated," and 3) "[t]he reversal . . . [should] be only for the limited determination of the applicability of ICWA."

DISPOSITION

The orders terminating parental rights are reversed and the matter is remanded with instructions for the juvenile court 1) to require HSA to interview the great-grandmother about possible Indian heritage, and 2) to determine whether ICWA applies; and 3) if the court rules ICWA does not apply, to reinstate the orders terminating parental rights.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.


12

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant A.C.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant E.R.

Leroy Smith, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.