Filed 2/17/22  In re A.L. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.L., <br><br> a Person Coming Under the Juvenile Court Law. | B311556 <br><br> (Los Angeles County Super. Ct. No. 20CCJP03434) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CLIFTON L., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

The sole issue on this appeal is whether the juvenile court made an adequate record of its communications with the Washington State juvenile court under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code,[1] § 3400 et seq.) before asserting jurisdiction over A.L., the child of father, Clifton L., who is incarcerated.

The Los Angeles County Department of Children and Family Services (the Department) took A.L. and her siblings into protective custody (based, in part, upon mother Karla E.'s ongoing substance abuse) during their trip from Franklin County, Washington, to Los Angeles, California. The juvenile court communicated on several occasions over a period of months with the Washington State juvenile court, ultimately taking jurisdiction of the children after learning that the Washington court had decided not to do so.

The juvenile court advised the parties and counsel on the record about its various discussions with the Washington State dependency court, including that the presiding judge of the dependency court for Franklin County had indicated an intention to decline jurisdiction, but the juvenile court could not remember

_____

[1] Subsequent unspecified statutory references are to the Family Code.

2

or recite the name of the presiding juvenile judge in Franklin County. Father faults this omission as prejudicial error.

Although it would have been preferable for the juvenile court to identify the name of the specific Franklin County presiding dependency judge who made the declination decision, section 3410, subdivision (d) of the UCCJEA contains no command that it do so. Nor does Father point to any legislative history suggesting such a requirement.

Father has also failed to show that the omitted information was either necessary, or indeed sufficient, to appeal the Washington court's decision to decline jurisdiction. The fact that a Washington court might have evaluated Father's relatives for A.L.'s placement without relying on the Interstate Compact on the Placement of Children (ICPC) is speculative and also fails to establish prejudice.

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Family

Mother and Father are from Washington State. Their daughter, A.L., was born in 2014. At the time of A.L.'s birth, Mother tested positive for methamphetamines. Father also struggled with substance abuse and was incarcerated during A.L.'s early years. Most recently, Father was convicted for possession of methamphetamines and sentenced to five years in federal prison. He is serving his sentence in Pennsylvania and is expected to be released in 2023.

A.L. regularly spent time with her paternal relatives, including Father's adult daughter from a prior relationship, Athena, and A.L.'s paternal grandmother. At times, when Mother was absent, Athena cared for A.L.

3

From 2017 to 2019, Mother had two additional children with David S., Sr., sons David S. and D.S. David S., Sr. is not a party to this appeal.

## B.    Child Welfare History

Between 2009 and August 2019, there were at least eight child welfare referrals in Washington relating to A.L., her older maternal half-sister F.M.,[2] or David S. and D.S. In each instance, the referral was closed with a notation of either no disposition or unfounded, and nothing in the record indicates that a dependency matter was ever filed in Washington State court. Washington State Department of Children, Youth, and Families (Washington DCYF) did not identify any child welfare referrals after August 2019.

## C.    Events Leading to Detention in California

In 2019, Mother began to date Pedro L. Pedro also had substance abuse issues, and in June 2020, Mother, Pedro, A.L., David S., and D.S. traveled by car from Washington to California to check Pedro into a drug treatment program. They stayed with Pedro's family in La Puente, California. On June 17, 2020, police responded to a report of child abuse. The Department also received information that Mother and Pedro appeared to be using drugs.[3]

---

[2] F.M. lives with her maternal grandmother in Washington.

[3] Because no party appeals the merits of the juvenile court's jurisdictional findings or dispositional orders, we do not state further facts relating to the bases for the juvenile court's rulings.

4

**D.    The Petition**

On June 23, 2020, the Department detained the children. On June 25, 2020, the Department filed a section 300 petition. The Department alleged the children came within the juvenile court's jurisdiction pursuant to subdivisions (a), (b), and (j) based upon Mother striking A.L.; Mother's substance abuse; Pedro's substance abuse, history of mental and emotional issues, and forcing A.L. to eat hot chilies; and Mother permitting the children to be driven from Washington to California without securing them in car seats.

On June 30, 2020, the juvenile court found Father was the presumed father of A.L.  On September 16, 2020, DCFS filed an amended petition, alleging A.L. has suffered or there was a substantial risk she would suffer serious physical harm or illness as a result of her Father's inability to care for her due to his history of substance abuse.  On October 30, 2020, the court appointed counsel for Father.[4]

**E.    Proceedings Relating to the UCCJEA**

On June 30, 2020, during an initial hearing, Mother and counsel for the children agreed that the juvenile court would need to speak with a court in Franklin County, Washington to determine whether it would assert subject matter jurisdiction.

On September 29, 2020, the juvenile court stated on the record that it reached out to the Franklin County court administrator to discover whether Washington would assert jurisdiction.  The juvenile court had not received a response to its

---

[4] The appellate record does not include a reporter's transcript of the October 30, 2020 non-appearance progress report hearing.

inquiry and stated it would contact the Franklin County court again.

During a November 6, 2020 progress report hearing, the juvenile court stated it "had been informed previously by Commissioner [Pamela E.] Peterson . . . that she had spoken with the presiding judge of Franklin County, and that they were going to be asserting jurisdiction in the state of Washington over this matter.  However, it appears that [county counsel] . . . reached out to . . . her like agency in Washington . . . , and has received conflicting information.[5] . . .  So . . . I'm going to once again

---

[5] Between October 26, 2020, to November 5, 2020, county counsel communicated by email with the Washington attorney general's office.  Those emails provide that on October 26, 2020, Commissioner Peterson from Franklin County, Washington juvenile dependency court advised the Los Angeles County juvenile court "that the [p]residing [j]udge of dependency in Franklin County, [Washington] confirmed that [Washington] will assert home state jurisdiction."  Then, on November 4, 2020, a Franklin County, Washington social worker advised that "she was still waiting on her [a]ssistant [a]ttorney [g]eneral to find out information[;] . . . she last heard from [them that they] were waiting to hear back from their [c]ourt."

On November 5, 2020, the Washington attorney general reported to the Department that Washington DCYF did not intend to proceed with a dependency matter.  "DCYF has not had contact with this family for some time, [since] 2019. . . . [Washington] DCYF does not have any open case on the family and/or any referral for any [child protective services] investigation.  It appears any facts leading to state intervention have occurred in [California] . . . .  [¶]  It appears that [Mother] and the child(ren) are in [California]. . . .  [Washington] DCYF has no objection to [California] proceeding with the case they

6

reach out to Commissioner Peterson and see what the discrepancy is . . . ." The juvenile court asked whether any counsel wished to be heard further on the matter. Father's counsel was present but remained silent.

On November 13, 2020, the juvenile court informed the parties that it called the Washington court twice that week, advised the staff in Washington that it had a progress report hearing that day and had set the matter for adjudication on November 30, 2020, and asked for a return call.[6] The juvenile

---

have and does not intend to file dependency petitions at this time." County counsel responded that Washington DCYF's declination was insufficient under the UCCJEA. "It has to be the [p]residing [j]udge of Franklin County dependency that must decline to assert home state jurisdiction."

[6] The juvenile court stated on the record at the November 13, 2020, hearing: "[I] called out to Washington state twice this week after being told that Washington would assume jurisdiction of this case. I actually spoke with an individual yesterday who took the information. I indicated to her . . . to either call and leave me a voicemail or send me an e-mail if they had decided to take the case. I have not heard from them."

"Previously I had communication with Tiffany Deaton . . . . She's the court administrator. I left two messages. Another woman called me back yesterday. I didn't write her name down, unfortunately. . . . I gave her the contact information for . . . the [individual] who indicated that Washinton's DCYF's position had not changed and they were not accepting jurisdiction. I told this woman that I spoke with . . . that this matter [was] set for adjudication on November the 30th . . . and that I had a progress report update . . . today, and I asked them to either e-mail me or return a call by 8:30 this morning. And I even just checked my e-mail now, and nothing has come in, nor have I had any voicemail

7

court concluded, "unless I hear back from them, I'm assuming that this matter will be set for adjudication, it will go forward on November the 30th at 8:30 a.m. in this department" and "our court will take jurisdiction, or retain jurisdiction, since Washington doesn't seem to want it." Father's counsel, present at the hearing, did not raise any objection or ask to be heard as to why the matter should proceed in Washington.

The juvenile court continued the November 30, 2020 adjudication hearing. In the meantime, according to a January 6, 2021, last minute information, on December 18, 2020, county counsel emailed the Department and conveyed that the juvenile court had spoken with Commissioner Peterson. Washington declined to open a case for the children. A copy of this email is not in the appellate record.

Father and his counsel appeared for the adjudication hearing scheduled for February 25, 2021. Due to scheduling issues for both Mother's and Father's attorneys, the juvenile court continued the matter to March 12, 2021. The court indicated it would make its UCCJEA record on that date. Notwithstanding that it was clear the juvenile court intended to move forward with adjudication, Father did not raise any objection to it taking subject matter jurisdiction.

On March 12, 2021, the juvenile court stated: "There was a long and involved discussion with the state of Washington as to whether or not they were seeking jurisdiction over this matter.

_____

from the Franklin County court administration about their willingness to accept this case. . . . So unless I hear back from them, I'm assuming that this matter will be set for adjudication, it will go forward on November the 30th at 8:30 a.m. in this department."

Prior to my taking over the bench in [this] department . . . in August, I believe that previous contact with the Washington court in Franklin County had been initiated by my predecessor Judge Nguyen. And I did see in the court notes that Judge Nguyen had initiated contact with the juvenile dependency bench in Franklin County . . . . I also reached out to Franklin County. There was a lot of delay in hearing back from them. On October 26, 2020, I did have an ex parte with the lawyers, and I advised that Commissioner Peterson . . . in Franklin County, Washington . . . informed [this court] that [the] state of Washington was going to assert jurisdiction [over] this dependency matter, as at that time Washington was going to claim home state jurisdiction. On November 6[,] there was an off-the-record conference held with the court again and counsel concerning emails that the [D]epartment . . . had received from the attorney general in the state of Washington, and they were attached to the [last minute information] for that date, indicating that once again I was going to reach out to the court in the state of Washington, which I did. And there was a nonprogress [report] hearing set for November 1 to report back to all counsel concerning the UCCJEA discussion. On November 13, the court called the case, and I indicated that I did speak with Washington twice to an individual named Tiffany Denton . . . , court administrator. On November 9th[,] this court called and left a message. I never received a call back. And again on November 12th, . . . I also received a message. I didn't write the name down, unfortunately, because I was expecting a return call from Washington DCYF, as the position had changed. There was no further communication via voicemail or e-mail concerning their willingness to accept the case, and at that time it was this court's

belief that Washington does not intend and[,] at that time[,] did not intend to assert jurisdiction. They are informed of the existence of the pendency of this juvenile dependency case, and this court is asserting jurisdiction and proceeding forward."

The juvenile court continued, "[o]n December 8, 2020, I also informed counsel off the record that I finally heard back from the judge in Washington, and at that time they were, in fact, declining jurisdiction, and that was a message from a court assistant who had discussed the matter with the presiding judge of the dependency court for Franklin County."

In response, Father's counsel argued, "please note my objection to this court taking jurisdiction of the matter. The court did indicate that on or about . . . November 9th you received a message. You did not take down a number. Then on December 18 [*sic*] you heard back from a Washington judge. I don't know if you indicated a name for that judge. . . . May we please have the name of that judge? My client was wishing and hoping that Washington would take jurisdiction over this matter. So at this time please note my objection to this court taking jurisdiction." Mother's counsel joined in Father's objection "in that we believe Washington is the proper venue."

The juvenile court stated that it would "have to augment the record with the name of the presiding judge. I'll have to look it up. It was the head of the dependency court for Franklin County, Washington. I looked it up on Google and I had it written down. And, unfortunately, I got rid of those handwritten notes because I thought the matter had been completed. . . . If counsel wants to look it up, it was the presiding judge of [the] juvenile dependency court for Franklin County who I spoke to."

10

The March 12, 2021, minute order does not reflect the name of the judicial officer that decided to decline home state jurisdiction.

## F.     Jurisdictional and Dispositional Orders

On March 12, 2021, after finding it had subject matter jurisdiction, the juvenile court asserted Welfare and Institutions Code section 300, subdivision (b) jurisdiction over A.L. and her half-siblings based on, inter alia, Mother's history of substance abuse, her failure to protect the children from Pedro, and Father's history of substance abuse.

The court removed A.L. from Mother and Father, and ordered reunification services for Mother only, bypassing reunification services for Father based on the length of his prison term.  (See Welf. & Inst. Code, § 361.5, subd. (e)(1).)  As Father had previously informed the Department that he wanted A.L. placed with her adult half-siblings in Washington, the juvenile court ordered an ICPC assessment of Athena as well as maternal relatives in Washington.

Father timely appealed.

## DISCUSSION

## A.     Governing Law

"The UCCJEA 'is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings.' [Citation.]  The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's

11

custody decrees. [Citation.]" (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.)[7]

To that end, section 3410 provides that "[a] court of this state may communicate with a court in another state concerning a proceeding arising under [the UCCJEA]." (§ 3410, subd. (a).)

---

[7] Section 3421 provides four bases under which a California court may assert jurisdiction over a child custody proceeding and issue a permanent child custody order. First, "[t]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." (§ 3421, subd. (a)(1).) " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).) Second, "[a] court of another state does not have jurisdiction under [section 3421, subdivision (a),] paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).) Third, "[a]ll courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428." (§ 3421, subd. (a)(3).) Fourth, "[n]o court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)." (§ 3421, subd. (a)(4).)

12

The parties may "participate in the communication" and if they "are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." (§ 3410, subd. (b).)

Other than communications relating to "schedules, calendars, court records, and similar matters," "a record must be made of a communication under this section." (§ 3410, subds. (c), (d).) Further, "[t]he parties must be informed promptly of the communication and granted access to the record." (§ 3410, subd. (d).) The record must be "inscribed on a tangible medium" or "stored in an electronic or other medium and [be] retrievable in perceivable form." (§ 3410, subd. (e).) A verbatim transcript of the communication is not required, and a memorialization of the communication at a hearing at which a reporter's transcript is made is sufficient to satisfy section 3410. (See *In re C.T.* (2002) 100 Cal.App.4th 101, 112.)

## B. Father Has Not Demonstrated that the Juvenile Court Prejudicially Erred in Failing to Record the Name of the Judicial Officer or Department that Declined Jurisdiction

Father maintains the juvenile court erred in "fail[ing] to make a record of which court it was communicating with" which was prejudicial because it left him without any appellate remedy to address the Washington court's errors. Father contends the deficiencies in the record left him without an opportunity to submit information to the Washington court and challenge the Washington DCYF's decision not to open a dependency matter in Washington.

As a consequence, Father argues that the judgment in this matter must be reversed and remanded to the juvenile court with

13

instructions for it to again inquire whether Washington will exercise subject matter jurisdiction under the UCCJEA and this time record "the identity of the Washington State court" with which the juvenile court communicates.

The plain language of section 3410, subdivision (d) does not state which details of the courts' communication must be recorded, let alone whether the juvenile court must record the name of the judicial officer or particular department with which it communicated. Nor does Father point to any legislative history that would establish such a requirement. Rather, Father makes a policy-based argument that in order to appeal the Washington court's decision, Washington requires the appellant to identify "the decision or part of decision which the party wants reviewed" (Washington Rules of Appellate Procedure (RAP) 5.3(a)), and that "[w]ithout knowing which court issued the order, it would have been impossible for [him] to accurately identify the decision." He contends that he thus suffered prejudice because the lack of this information prevented him from appealing the Washington court's errors. We do not agree.

Although the better practice would have been for the juvenile court to record the name of the judicial officer who made the decision to decline jurisdiction, we do not conclude that the court's failure to do so contravened section 3410, subdivision (d). The juvenile court stated the decision to decline jurisdiction had been made on or about December 8, 2020, by the "presiding judge" or the "head" "of the dependency court for Franklin

14

County, Washington."[8]  Father has not demonstrated that this information was insufficient, either under section 3410, or to initiate an appeal in Washington.[9]

Father has also failed to demonstrate prejudice because he has not shown that, had he had the name of the particular judicial officer or department that made the decision, he could have appealed the Franklin County court's decision in Washington.  Relying on *In re E.R.* (2018) 28 Cal.App.5th 74, 80, Father claims that "if one has a problem with the out-of-state court's decision to relinquish subject matter jurisdiction, the matter must be taken up in that state."

*In re E.R.* is procedurally distinct from the case before us in that there was a pending out-of-state (Nevada) dependency matter.  Thus, there was a dependency court case from which the parents could appeal in that state.  The same is not true here: there was no pending dependency matter in Washington relating to A.L. or her siblings.  Indeed, the record suggests Washington DCYF has *never* filed a dependency petition relating to the children.[10]

---

[8] A January 6, 2021, last minute information, also suggests that the decision to decline jurisdiction had been made by Commissioner Peterson.

[9] Father complains a Google search may result in unreliable or incorrect information.  However, he does not explain why his counsel could not telephone the Franklin County court in an effort to identify which specific court, based upon the information he had, decided to decline jurisdiction.

[10] On our own motion (Evid. Code, § 452, subd. (e)), we take judicial notice of Washington Rules of Appellate Procedure Form

15

We pause to note that Father's participation in the UCCJEA determination was desultory. For example, under section 3410, subdivision (b), Father could have submitted facts and argument to the juvenile court which, in turn, could have been communicated to the Franklin County court.[11] Father also

---

1, the notice of appeal, which purports to require a trial court case number. (See https://www.courts.wa.gov/court_rules/pdf/RAP/APP_RAP_FORM 1.pdf (as of 2/16/22).)

Further, RAP 5.3 suggests that a copy of a written order must be attached to the notice of appeal. (See RAP 5.3(a) ["**Content of Notice of Appeal**. A notice of appeal must (1) be titled a notice of appeal, (2) specify the party or parties seeking the review, (3) designate the decision or part of decision which the party wants reviewed, and (4) name the appellate court to which the review is taken. [¶] The party filing the notice of appeal *should attach to the notice of appeal a copy of the signed order or judgment from which the appeal is made,* and, in a criminal case in which two or more defendants were joined for trial by order of the trial court, provide the names and superior court cause numbers of all codefendants. . . ." (Italics added.)] However, Father had neither a trial court case number nor a written order to provide with a Washington notice of appeal.

[11] Although the issue has not been directly raised in this appeal, case law suggests that Father could have challenged the juvenile court's assertion of subject matter jurisdiction by petitioning it to decline and transfer jurisdiction on the basis that it was an inconvenient forum under section 3427 (see *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 348) or by filing an action for declaratory relief in Washington (see *Burst v. Schmolke* (La. Ct. App. 2011) 62 So. 3d 829, 833; *Monk v. Pomberg* (Tex. App. 2007), 263 S.W.3d 199, 206).

could have requested to be present during the communications between the juvenile courts in California and Washington.

Father pursued neither course. To the contrary, Father remained on the sidelines for four months, notwithstanding the juvenile court's indication that it would likely take subject matter jurisdiction. Even when he did object, Father argued only that he had "wish[ed] and hop[ed]" that the matter would proceed in Washington.[12]

Father also suggests that the Washington court's purported errors were prejudicial because "[h]ad the Washington State

---

[12] The Department argues Father forfeited his appeal by failing to raise a timely objection in the juvenile court. However, upon the juvenile court's reading into the record of its UCCJEA efforts, Father promptly inquired as to the name of the Washington judicial officer who made the decision to decline jurisdiction. Thus, Father adequately preserved this issue for appeal.

The Department also argues that Father lacks standing because he has not shown that he has been aggrieved by the juvenile court's assumption of subject matter jurisdiction. Standing is construed liberally, with doubts resolved in its favor. (*In re K.C.* (2011) 52 Cal.4th 231, 236; see *Johnson v. Department of Social Services* (1981) 123 Cal.App.3d 878, 883 [court will address merits of appeal despite "some reservations about appellants' standing"].) Here, upon assuming subject matter jurisdiction, the juvenile court made jurisdictional findings and dispositional orders against Father. Although Father's appeal does not challenge those findings or orders on the merits, he seeks to reverse these findings and orders, by which he is aggrieved, based on the juvenile court's alleged failure to comply with the UCCJEA. Accordingly, we decline to dismiss the appeal on the basis that Father lacks standing.

court stood by its original decision to exercise subject matter jurisdiction, [placement with Athena] could have been effectuated without need to follow ICPC procedures." Yet Father has not shown how proceeding under ICPC injured him or how an assessment of Athena's home under the ICPC differed from an assessment of her home under Franklin County's jurisdiction.

## DISPOSITION

The March 12, 2021 findings and order of the juvenile court relating to A.L. are affirmed.

NOT TO BE PUBLISHED

CRANDALL, J.[*]

We concur:

CHANEY, J.

BENDIX, Acting P.J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.